NEW YORK STATE TEAMSTERS CONFERENCE PENSION AND RETIREMENT FUND et al., Appellants,

v.

PENSION BENEFIT GUARANTY CORPORATION et al.

No. 77–1821.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 1, 1978.

Decided Jan. 10, 1979.

Rehearing Denied Feb. 27, 1979.

---

**2.** *DeSmedt* involved a nearly identical provision, section 27 of the Shipping Act of 1916, 46 U.S.C. § 826 (1970).

954

S. G. Lippman, Washington, D. C., with whom Thomas J. Hart, Washington, D. C., was on brief, for appellants.

William F. Hanrahan, Atty., Pension Benefit Guaranty Corp., Washington, D. C., with whom E. Calvin Golumbic, Asst. Gen. Counsel, Washington, D. C., was on brief, for appellee Pension Benefit Guaranty Corp.

Bettina B. Plevan, New York City, with whom George G. Gallantz, New York City, was on brief, for appellee Brewery Fund. David J. Taylor and Charles R. Work, Washington, D. C., for appellee Brewery Fund.

Susan Joan Martin, New York City, for appellee Brewery Workers Pension Fund and Trustees.

Before J. EDWARD LUMBARD,* Senior Circuit Judge for the Second Circuit, and TAMM and LEVENTHAL, Circuit Judges.

Opinion for the court filed by LUMBARD, Senior Circuit Judge.

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. The merger agreement was ratified by Brewery Fund participants in November of 1973.

LUMBARD, Senior Circuit Judge:

The New York State Teamsters Conference Pension and Retirement Fund ("Teamsters Fund") sued in the district court to compel the Pension Benefit Guaranty Corporation ("PBGC"), a government corporation charged with various administrative responsibilities under the Employee Retirement Income Security Act of 1974 ("ERISA" or "the Act"), 29 U.S.C. § 1001 et seq., to intervene and disapprove a 1973 merger agreement between the Teamsters Fund and Brewery Workers Pension Fund ("Brewery Fund"). We affirm the order of the district court denying the Teamsters Fund request for declaratory and injunctive relief and granting summary judgment to defendants PBGC and Brewery Fund.

The essential facts are uncontested. The Teamsters Fund and the Brewery Fund are multiemployer defined benefit pension plans within the meaning of §§ 3(2), (35), and (37) of ERISA. A "multiemployer plan" is a pension plan to which no one employer contributes more than 50% of the total yearly contributions and under which benefits are payable to a retired participant even if his employer ceases to make contributions. ERISA § 3(37). In August of 1973 the Teamsters Fund and the Brewery Fund agreed to merge their two funds in order to "minimize the impact upon the funds of possible future declines in employment or other subsequent events affecting any one employer or industry." The merger agreement was made contingent on its approval by participants in the Brewery Fund and on obtainment of a ruling from the Internal Revenue Service that the merged plan would be eligible for favorable tax treatment.[1]

Some six months after the merger agreement was signed, Rheingold Breweries, one of the two largest contributing employers to the Brewery Fund, announced that it

The necessary tax ruling from the IRS was not obtained until November of 1976, apparently because of the Teamsters Fund's recalcitrance in providing necessary documentation.

intended to terminate its operations. This development made the merger much less attractive to the Teamsters Fund since it dramatically reduced the Brewery Fund's prospective contributions to the joint plan without a proportionate reduction in the joint plan's prospective liabilities to Brewery Fund participants. Consequently, the Teamsters Fund, in February of 1974, citing changed economic circumstances, repudiated the merger agreement and refused to take any further steps to consummate the merger.[2] The Brewery Fund responded several months later with a suit for specific performance in New York State Supreme Court. That court, on May 1, 1975, ruled that the merger agreement remained valid and enforceable and ordered the Teamsters Fund specifically to perform its obligations thereunder. The lower court judgment was unanimously affirmed by the Appellate Division, Second Department, in September of 1975, *Brewery Workers Pension Fund v. New York State Teamsters Conference Pension and Retirement Fund*, 49 A.D.2d 755, 374 N.Y.S.2d 590 (App.Div.2d Dept., 1975), and leave to appeal to the New York Court of Appeals was denied the Teamsters Fund in February of 1976. 38 N.Y.2d 709, 382 N.Y.S.2d 1028, 346 N.E.2d 558 (1976).

In September of 1974, while the Brewery Fund's action for specific performance was pending before the New York courts, Congress enacted ERISA. The Act was designed to protect individual pension rights and established minimum financial and fiduciary standards for private employee benefit plans as well as a system of benefit insurance. Of specific relevance to this proceeding are §§ 208 and 1015(*1*) of ERISA, parallel provisions that set out pre-conditions for the merger of pension plans within the Act's jurisdiction.[3] In essence, the merger of two pension plans is prohibited unless each participant would be entitled to receive a benefit "immediately after the merger . . . equal to or greater than the benefit he would have been entitled to receive immediately before the merger." ERISA §§ 208 and 1015(*1*). That restriction, however, applies "in the case of a multiemployer plan only to the extent determined by the PBGC." Id.

Where applicable, ERISA preempts state law concerning employee benefit plans, ERISA § 514(a), and, with exceptions not here relevant, provides for exclusive federal jurisdiction over actions brought under the Act. ERISA § 502(e)(1). Congress made clear, however, that the transition from state to federal regulation was to be gradual by providing that ERISA would not preempt state law with respect to "any cause of action which arose, or any act or omission which occurred before January 1, 1975." ERISA § 514(b)(1). Congress thus ruled out concurrent federal and state regulation[4] but left to the states "what is essentially a clean-up role, . . . the disposition of causes of action and disputes with respect to employee benefit plans existing before January 1, 1975." *Azzaro v. Harnett*, 414 F.Supp. 473, 475 (S.D.N.Y.1976), aff'd, 553 F.2d 93 (2nd Cir. 1977).

**2.** The Brewery Fund's already bleak economic condition was made worse when the F&M Schaefer Brewing Corporation closed its New York operations in January of 1976. The Schaefer action, however, was taken well after the Teamsters Fund's decision to repudiate the merger agreement.

**3.** § 208 contains the substantive rules governing mergers of private pension plans. Section 1015(*1*) provides that a trust maintained under a pension plan must abide by the merger rules in order to acquire and maintain favorable tax treatment.

**4.** In introducing the conference report on ERISA, Senator Harrison A. Williams Jr., Chairman of the Senate Committee on Labor and Public Welfare, stated:

> "It should be stressed that with the narrow exceptions specified in the bill, the substantive and enforcement provisions of the conference substitute are intended to preempt the field for Federal regulations, thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans. This principle is intended to apply in its broadest sense to all actions of State or local governments, or any instrumentality thereof, which have the force or effect of law." 1974 U.S.Code Cong. & Admin.News pp. 4639, 5188–89.

The Teamsters Fund first made its claim that ERISA applied to its merger agreement with the Brewery Fund in March of 1976 when it requested the PBGC to disapprove the merger under §§ 208 and 1015(*1*) of the Act. By letter dated June 4, 1976, the PBGC declined that request on grounds 1) that the merger agreement and the Teamsters Fund's repudiation thereof occurred prior to January 1, 1975 and were thus outside the PBGC's jurisdiction by virtue of the savings provision in § 514(b)(1) of ERISA; and 2) that the PBGC had not yet drafted regulations to make §§ 208 and 1015(*1*) of the Act operational with respect to multiemployer plans such as the Teamsters Fund and the Brewery Fund.

Following its rebuff from the PBGC, the Teamsters Fund, in January of 1977, filed the instant action in the District Court for the District of Columbia. The Fund sought a declaration that §§ 208 and 1015(*1*) of ERISA were applicable to its agreement with the Brewery Fund and an injunction directing the PBGC to intervene and assert jurisdiction over the merger. The district court's denial of that relief and its order granting summary judgment for the defendants Brewery Fund and PBGC rested on two legal determinations. The court concluded first that the Teamsters Fund's claims as to the applicability of ERISA were res judicata since they could have been raised as affirmative defenses to the Brewery Fund's state court action for specific performance.[5] In addition, the court ruled that ERISA had no retroactive effect and thus could not be applied where an agreement, and a mature cause of action based thereupon, pre-dated the Act's adoption.[6]

In contending on this appeal that the issues raised by this action are not res judicata, the Teamsters Fund argues that the normal rule barring a party from litigating in federal court claims that were or could have been raised in a prior state court action does not apply to matters with respect to which federal courts have exclusive jurisdiction. Though the Teamsters Fund does not appear to deny that the New York state courts could have entertained, as an affirmative defense, an argument that the Teamsters Fund—Brewery Fund agreement violated the merger provisions of ERISA, it contends that any determination the state courts might have made as to the applicability of the Act would not be entitled to binding effect in a subsequent federal action.

Primary support for the Teamsters Fund's position traces to the Second Circuit's decision in *Lyons v. Westinghouse Electric Corp.*, 222 F.2d 184, *cert. denied*, 350 U.S. 825, 76 S.Ct. 52, 100 L.Ed. 737 (1955). In that case, plaintiff's treble damage action charged a conspiracy to monopolize trade, a claim that had been raised defensively in a state court contract action. Vacating a stay of the federal anti-trust suit pending final judgment in the state court action, Judge Learned Hand's opinion held that the state court's disposition of the conspiracy claim would not be entitled to collateral estoppel effect since the federal courts' exclusive jurisdiction over treble damage actions "impl[ied] an immunity of their decisions from any prejudgment elsewhere." Id. at 189.

The decision in *Lyons* has received a mixed response from legal commentators, *compare* 1B J. Moore, Federal Practice § 0.445 at 4113–14 (2d ed. 1974) *with* Devel-

---

5. The question of ERISA's applicability to the merger agreement was not raised before the New York State Supreme Court, but apparently was brought to the attention of the Appellate Division. That court's opinion does not address the issue, however.

6. On this appeal, defendants PBGC and the Brewery Fund urge a third ground in support of the decision below. Since the merger provisions of §§ 208 and 1015(*1*) of ERISA are ex-

pressly made applicable to multiemployer plans such as the Teamsters Fund and the Brewery Fund "only to the extent determined by the PBGC," the defendants contend that the fact that the PBGC has not yet promulgated regulations governing multiemployer plans provides a further reason that ERISA cannot be applied to the merger agreement. Because of our disposition of the other issues presented by this case, there is no need for us to reach this question.

opments in the Law: Section 1983 and Federalism, 90 Harv.L.Rev. 1133, 1335, n.20 (1977), and a number of courts have refused to follow it. *See, e. g., Azalea Drive-In Theatre, Inc. v. Hanft,* 540 F.2d 713 (4th Cir. 1976). A rule that prevents parties from relitigating claims that could have been or were raised in a prior forum does, in fact, have much to recommend it. At the same time, we note that the strongest case for adherence to the *Lyons* rationale exists in situations where, as is true in the instant case, 1) the party against whom the estoppel is urged did not elect the state court forum, *see,* Note, Res Judicata: Exclusive Federal Jurisdiction and the Effect of Prior State-Court Determinations, 53 Va. L.Rev. 1360, 1365–66 (1967); and 2) the federal claim to which the state court judgment is set up as a bar turns predominantly upon a legal rather than factual determination and involves the interpretation of federal rather than state law.

We need not, however, resolve this difficult question of federal law since we agree with the district court that the federal court lacks subject matter jurisdiction due to the fact that the execution and repudiation of the merger agreement occurred prior to the effective date of ERISA. The Teamsters Fund does not dispute that ERISA's preemption of state law is conditioned by § 514(b)(1) of the Act which indicates that ERISA does not apply to "any cause of action which arose, or any act or omission which occurred before January 1, 1975." Nor does it deny that the merger agreement and its repudiation thereof predated January 1, 1975. What the Teamsters Fund does contend is that no *cause of action* existed before January 1, 1975, since the merger agreement was made contingent on a favorable IRS ruling and no such

ruling was obtained until November of 1976.[7]

This objection, however, disregards both the character of the merger agreement and the consequences of the Teamsters Fund's repudiation of it. In the first place, not all of the Teamsters Fund's obligations under the merger agreement were contingent on IRS' approval. For example, both parties were expressly obligated to execute "any and all documents necessary to implement" the agreement, which clearly would include the documents needed to support an application for a ruling from the IRS. The Teamsters Fund, however, refused to provide such documentation,[8] and a cause of action to compel its cooperation was obviously not contingent on IRS' approval.

But even assuming that the Teamsters Fund's refusal to assist in preparations for the merger was not a breach of the merger agreement by non-performance, there would be no merit to its argument that the Brewery Fund's cause of action did not arise prior to IRS' approval. Under traditional doctrine, repudiation constitutes a breach of contract even though made in advance of the time performance is due. Restatement (Second) of Contracts § 277(1) (Tent. Draft 1974). The Teamsters Fund's repudiation of its agreement with the Brewery Fund was an anticipatory breach thereof, and effectively eliminated IRS' approval as a pre-condition to a suit by the Brewery Fund to enforce specifically the agreement's terms. *Id.* at § 277, comment b. Indeed, the Teamsters Fund's own legal maneuvering suggests its awareness of this fact. Certainly the Teamsters Fund did not think that its repudiation of the merger agreement in February of 1974, over two years before the necessary IRS ruling was

---

**7.** The Teamsters Fund also contends that regardless of whether a cause of action arises prior to January 1, 1975, §§ 208 and 1015(*1*) of ERISA must be read to apply to any merger which *occurs* after that date. This argument simply ignores the savings provision in § 514(b)(1) of the Act. The Teamsters Fund offers no explanation as to why Congress would leave to state law causes of action arising before January 1, 1975 but make their enforcement after that date contingent on the provisions of ERISA.

**8.** Part of the relief requested by the Brewery Fund, and granted by the New York Supreme Court, was an order directing the Teamsters Fund "to execute those documents that are necessary in order to request approval from the Internal Revenue Service pursuant to the terms of the integration agreement."

obtained, was an idle step without legal consequence. Rather, because it believed that the merger agreement was unenforceable, the Teamsters Fund sought to test the contract's validity by openly renouncing its terms. Consistent with this intention, the Teamsters Fund's defense to the Brewery Fund's suit for specific performance was that changed economic conditions nullified the agreement, not that the Brewery Fund's suit on the contract was premature.

In sum, a cause of action on behalf of the Brewery Fund to enforce the merger agreement according to its terms was not contingent upon IRS' approval of the merger. To the contrary, the Brewery Fund's cause of action arose at the time of the Teamsters Fund's repudiation and thus is well outside the scope of ERISA by virtue of § 514(b)(1). It should also be recognized that the fact that the Brewery Fund could not have sued prior to the IRS ruling to compel a final merger of the two funds does not alter the conclusion that ERISA cannot apply. To rule otherwise would produce the anomalous result that state law governed the Brewery Fund's cause of action to force the Teamsters Fund to proceed with steps preliminary to the actual merger while the provisions of ERISA controlled any subsequent action to bring the merger to fruition—the exact situation the preemption and savings provisions of § 514 of ERISA were designed to avoid. By mandating that ERISA would preempt state law and yet leaving to state law the determination of causes of action predating January 1, 1975, Congress sought to provide an orderly transition from state to federal regulation. The result we reach today is consistent with that objective.

Judgment affirmed.