853 F.2d 1071
 57 USLW 2147, 9 Employee Benefits Ca 2524
 Thomas J. BAUM, John J. O'Neill, Steven A. Woleben, David J.
Milback, Bob Holmes, Russell Salvo, Thomas J. Sauro, Timothy
M. Bishop, Thaddeus C. Rutherford, Charles B. Hepp, Ernest
C. Breault, Donald I. Stoetzel, Bernhard C. Collatz, Joseph
R. Armstrong, James C. Perkins, Harold J. Legnard, Sam P.
Boyian, David S. Ross and Joseph Ready, on behalf of
themselves and all others similarly situated as participants
in the New York State Teamsters Conference Pension and
Retirement Fund, Plaintiffs-Appellants,
v.
T. Edward NOLAN, Curtis Gundersen, Richard Muller, Rocco F.
DePerno, Victor Mousseau, Paul E. Bush, Jack Canzoneri and
Victor Olivadotti, both individually and as Trustees of the
New York State Teamsters Conference Pension and Retirement
Fund, New York State Teamsters Conference Pension and
Retirement Fund and "John Doe" and "Jane Doe", the names
being fictitious but intending to be Trustees of the New
York State Teamsters Conference Pension and Retirement Fund,
at the times set forth in the Complaint, Defendants-Appellees.
 No. 1168, Docket 88-7126.
 United States Court of Appeals,
Second Circuit.
 Argued May 19, 1988.
Decided Aug. 12, 1988.
 
 David W. Silverman, New City, N.Y. (Granik, Silverman, Sandberg, Campbell & Nowicki, New City, N.Y., of counsel), for plaintiffs-appellants.
 Joseph E. Kolick, Jr., Washington, D.C. (Robert J. Higgins, Dickstein, Shapiro & Morin, Washington, D.C., Richard N. Aswad, Aswad & Ingraham, Binghamton, N.Y., of counsel), for defendants-appellees.
 Before LUMBARD, MESKILL and WINTER, Circuit Judges.
 MESKILL, Circuit Judge:
 
 
 1
 In this appeal, we are called upon to decide whether the United States District Court for the Northern District of New York, McAvoy, J., correctly granted summary judgment for the defendants, Trustees of the New York State Teamsters Conference Pension and Retirement Fund (the Teamsters Fund), a multi-employer pension fund, on claims that they committed breaches of fiduciary duty actionable under the Employee Retirement Income Security Act (ERISA), 29 U.S.C.A. Sec. 1001 et seq. (West 1985 & Supp.1988). The plaintiffs-appellants are Teamster participants in the Teamsters Fund (the Participants). According to the Participants' complaint, the defendants-appellees Trustees of the Teamsters Fund (the Trustees) breached their fiduciary duty in 1973 when they agreed to merge the Teamsters Fund with the Brewery Workers Pension Fund (the Brewery Fund) without making adequate inquiry into the financial soundness of the Brewery Fund. The Participants also contend that the Trustees have a fiduciary obligation to cease making payments to Brewery Fund beneficiaries and to terminate or segregate the Brewery Fund from the Teamsters Fund because the former underwent a "partial termination" in 1976, before the merger was finally consummated. The Participants argue that these actions are subject to the fiduciary duty provisions of ERISA. On appeal, they add that the declaratory and injunctive relief they seek is appropriate even though New York state courts have ordered the Trustees to comply with the merger agreement and pay benefits to beneficiaries of the Brewery Fund.
 
 
 2
 The Trustees moved pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the complaint for failure to state a claim. The district court converted the Trustees' motion to one for summary judgment under Fed.R.Civ.P. 56, see Fed.R.Civ.P. 12(b), and dismissed the Participants' complaint. The Participants appeal. For the reasons that follow, we affirm.
 
 BACKGROUND
 
 3
 The facts underlying the instant litigation are not in dispute. In August 1973, the Brewery Fund and the Teamsters Fund entered into an agreement to merge. Shortly thereafter, however, one of the largest breweries in the New York area announced that it would shut down. Faced with the loss of a significant portion of brewery employer contributions without a corresponding reduction in pension benefit liability to Brewery Fund beneficiaries, the Teamsters Fund repudiated the agreement in February 1974. The Brewery Fund sued in New York Supreme Court to compel specific performance. The Supreme Court held that under New York law, "chang[ed] economic conditions" did not excuse performance of the merger agreement. See J.App. 201-02. The court therefore granted summary judgment for the Brewery Fund, holding that the agreement was valid, binding and enforceable, and ordering specific performance on the part of the Teamsters Fund. Brewery Workers Pension Fund v. New York State Teamsters Conference Pension and Retirement Fund, No. 9997/74 (N.Y.Sup.Ct. Apr. 11, 1975), aff'd mem., 49 A.D.2d 755, 374 N.Y.S.2d 590 (2d Dep't 1975), leave to appeal denied, 38 N.Y.2d 709, 382 N.Y.S.2d 1028, 346 N.E.2d 558 (1976).
 
 
 4
 The merger agreement was conditioned on the Teamsters Fund obtaining a favorable determination from the Internal Revenue Service (IRS) on the tax qualification of the merged plan. In September 1976, the IRS District Director issued such a determination. See J.App. 208-09. Despite having obtained this ruling, the Teamsters Fund still did not go through with the merger. The Brewery Fund therefore moved for enforcement of the original New York Supreme Court decision. In an Order and Supplemental Judgment dated April 12, 1977, the Supreme Court granted the motion. The court declared the merger to be complete as of December 1, 1976, and held that all members of the Brewery Fund had become members of the Teamsters Fund as of the same date. In sweeping and unambiguous language, the court also directed the Teamsters Fund and its Trustees to
 
 
 5
 (a) accept all the assets and property of the [Brewery Fund] ...; (b) assume and pay all legal and proper obligations of the [Brewery Fund]; (c) pay all benefits due to: covered members already retired under the [Brewery Fund]; members in receipt of disability benefits; beneficiaries entitled to receive benefits under the [Brewery Fund]; and former members with vested rights not yet receiving benefits, but who become entitled to receive benefits in the future....
 
 
 6
 J.App. 205-06. The court also ordered that Brewery Fund assets be transferred to the Teamsters Fund. Id. at 206. Brewery Workers Pension Fund v. New York State Teamsters Conference Pension and Retirement Fund, No. 9997/74 (N.Y.Sup.Ct. Apr. 12, 1977), aff'd, 62 A.D.2d 1046, 404 N.Y.S.2d 158 (2d Dep't), motion for leave to appeal dismissed, 45 N.Y.2d 706, 408 N.Y.S.2d 1025, 380 N.E.2d 338 (1978).
 
 
 7
 In addition to resisting the Brewery Fund's efforts to force specific performance of the merger agreement, the Teamsters Fund took affirmative steps to avoid the agreement. The Teamsters Fund asked the Pension Benefit Guaranty Corporation (PBGC) to disapprove the merger under ERISA. The PBGC refused to do so, however. The District of Columbia Court of Appeals agreed with the PBGC that ERISA did not apply to the merger agreement because its "execution and repudiation ... occurred prior to the [January 1, 1975] effective date of ERISA." New York State Teamsters Conference Pension and Retirement Fund v. Pension Benefit Guaranty Corp., 591 F.2d 953, 957 (D.C.Cir.) (Lumbard, J., sitting by designation), cert. denied, 444 U.S. 829 (1979).
 
 
 8
 The Teamsters Fund also sought to have the United States Tax Court revoke the IRS District Director's favorable 1976 determination with respect to the tax qualification of the merged plan. We affirmed the tax court's conclusion that it lacked jurisdiction to grant the requested relief. Wenzel v. Commissioner of Internal Revenue, 707 F.2d 694, 696 (2d Cir.1983).
 
 
 9
 Finally, the Trustees in 1983 asked the IRS for technical advice. They sought a finding that the Brewery Fund had lost its tax qualified status before the merger. Such a finding would vitiate a condition precedent to the merger and allow them to avoid it. The IRS District Director rejected this contention, however, in a determination letter issued in February 1985 and based on a detailed Technical Advice Memorandum issued by the District Director's Brooklyn Key District Office, see J.App. 38-47. The letter stated that a "partial termination" of the Brewery Fund had occurred before the merger was consummated in 1976, but that this event did not affect the Brewery Fund's tax qualification. See id. at 48-49.
 
 
 10
 In 1977, employees covered by the former Teamsters Fund sued both funds to enjoin the merger. The district court dismissed the complaint, however, holding that plaintiffs' allegations of ERISA violations failed to state a claim. Cicatello v. Brewery Workers Pension Fund, 434 F.Supp. 950, 958 (W.D.N.Y.1977), aff'd mem., 578 F.2d 1366 (2d Cir.1978).
 
 
 11
 Against this background, the Participants commenced the instant lawsuit. They asserted federal jurisdiction under ERISA, claiming that the defendant Trustees had breached and were continuing to breach their fiduciary responsibilities. The Participants identified three interrelated but purportedly distinct breaches of duty. First, they contended that the Trustees had failed to make proper inquiries into the financial soundness of the Brewery Fund before entering into the agreement to merge in 1973. Second, they contended that the Trustees were dissipating Teamsters Fund assets to pay Brewery Fund benefits, an action rendered improper by the underlying impropriety of the merger agreement itself. Third, they contended that the Trustees had an affirmative duty to terminate the Brewery Fund or segregate it from the Teamsters Fund because the "partial termination" caused a portion of the Brewery Fund to "spin off" or go out of existence.[1]
 
 
 12
 The district court rejected all of these contentions and dismissed the complaint. The Participants now appeal, repeating their contentions below and adding the argument that the decisions of the New York state courts do not shield the Trustees' actions because ERISA preempts state law.[2]DISCUSSION
 
 
 13
 A. Breach of Fiduciary Duty: 1973 Merger Agreement
 
 
 14
 The core of the Participants' argument is the contention that the Trustees agreed to the merger in 1973 without making sufficient inquiry into the financial condition of the Brewery Fund. The Participants argue that this failure and its consequences are actionable under ERISA.
 
 
 15
 We disagree. It is true that ERISA establishes a statutory standard of care for pension plan fiduciaries. See 29 U.S.C. Sec. 1104 (1982). But even if the alleged failure to inquire fell below that standard, it is not by itself actionable under ERISA because it occurred before January 1, 1975, the date ERISA became effective. See 29 U.S.C. Sec. 1144(b)(1) (1982); Malone v. White Motor Corp., 435 U.S. 497, 499 n. 1, 98 S.Ct. 1185, 1187 n. 1, 55 L.Ed.2d 443 (1978). Cf. New York State Teamsters Conference Pension Fund, 591 F.2d at 957 (no federal jurisdiction under pension benefit insurance provisions of ERISA because execution and repudiation of merger agreement between Brewery Fund and Teamsters Fund occurred before effective date of ERISA).
 
 
 16
 The Participants nevertheless contend that the initial breach of fiduciary duty in entering into the merger agreement is still actionable under ERISA because it taints subsequent and current payments of benefits to brewery workers pursuant to the agreement. We are not persuaded, however, that this "continuing breach" analysis brings the Participants' breach of duty claim within the coverage of ERISA. Section 1144(b)(1) expressly provides that ERISA does not supersede state law "with respect to ... any act or omission which occurred[ ] before January 1, 1975." Courts have uniformly rejected the theory that pre-ERISA acts are actionable under ERISA if they generate consequences after ERISA's effective date. See Menhorn v. Firestone Tire & Rubber Co., 738 F.2d 1496, 1501-02 (9th Cir.1984); Freeman v. Jacques Orthopaedic and Joint Implant Surgery Medical Group, Inc., 721 F.2d 654, 656-57 (9th Cir.1983); Coward v. Colgate-Palmolive Co., 686 F.2d 1230, 1233-34 (7th Cir.1982), cert. denied, 460 U.S. 1070, 103 S.Ct. 1526, 75 L.Ed.2d 948 (1983); Quinn v. Country Club Soda Co., 639 F.2d 838, 840-41 (1st Cir.1981); Martin v. Bankers Trust Co., 565 F.2d 1276, 1278-79 (4th Cir.1977). Participants' theory "would read ... section [1144](b)(1) out of the statute," id. at 1279; accord Coward, 686 F.2d at 1234. Accordingly, we hold that ERISA does not cover the Participants' claims based on either the alleged breach of fiduciary duty in entering into the 1973 merger agreement or the subsequent payment of benefits to brewery workers pursuant to the merged plan.
 
 
 17
 In light of this conclusion, we may summarily dispose of the Participants' argument that the judgments of the New York courts are preempted by ERISA. First, this argument was not raised below. Second, the argument is without merit. To the extent that the Participants base their allegations of breach of duty on the Trustees' conduct prior to execution of the merger agreement and the purportedly tainted consequences of that decision, their claim is not subject to ERISA. Accordingly, the state courts were free to apply state law, see 29 U.S.C. Sec. 1144(a), (b)(1), and their judgments are not subject to collateral attack on preemption grounds.
 
 
 18
 B. Breach of Fiduciary Duty: Terminating the Brewery Fund
 
 
 19
 The Participants also base their claim that the Trustees breached their fiduciary duty on a theory grounded in provisions of ERISA and the Internal Revenue Code (I.R.C.), independent of the 1973 agreement and the circumstances of its execution. According to this theory, the 1976 "partial termination" of the Brewery Fund limits the benefits available to Brewery Fund beneficiaries to the assets in the Brewery Fund at that time. Therefore, the Participants contend, the Trustees are obliged to pay benefits to Brewery Fund beneficiaries only until Brewery Fund assets are exhausted. Moreover, the Participants argue, the Trustees have an affirmative duty to spend no more than the Brewery Fund's assets, and a concomitant duty, once those assets are exhausted, to terminate the Brewery Fund outright or to segregate it from the Teamsters Fund. The Participants conclude that they are entitled to relief because the Trustees have failed to perform these purported duties.
 
 
 20
 As an initial matter, the orders of the New York state courts place a significant obstacle in the Participants' path. We have just held that ERISA does not preempt those orders with respect to the merger agreement and its consequences. The Trustees are therefore subject to valid state decisions that compel them, in no uncertain terms, to merge the two funds into one and to pay benefits to Brewery Fund beneficiaries as they come due. The Participants cite no authority, and our research discloses none, to support the remarkable notion that fiduciary duty can require deliberate disobedience of a valid judicial order. On the contrary, it is more likely that obedience to such orders insulates a fiduciary from claims of breach of duty. See III A. Scott, The Law of Trusts Sec. 259, at 2217 (3d ed. 1967 & Supp.1985).
 
 
 21
 Even if the Participants could overcome the force of the state courts' judgments, the "partial termination" of the Brewery Fund does not translate into a fiduciary duty to act as they urge. Under the I.R.C., pension plans qualify for favorable tax treatment if they are structured as the Code dictates. See generally 26 U.S.C.A. Sec. 401 (West 1978 & Supp.1988). Among these structural criteria is a requirement that a pension plan must provide that participating employees' accrued rights become nonforfeitable, or vest, upon termination or partial termination of the plan. 26 U.S.C.A. Sec. 411(d)(3) (West 1978 & Supp.1988). The plan must also provide that in the event of full or partial termination, accrued rights vest "to the extent funded." Id. The Participants contend that the 1976 partial termination of the Brewery Fund, as found in the 1985 IRS Determination Letter, see J.App. 48, and Technical Advice Memorandum, see id. at 44, means that the interests of brewery workers vested in 1976 only "to the extent funded" according to section 411(d)(3). The Participants conclude that the Trustees therefore have a fiduciary obligation to terminate the Brewery Fund or segregate it from the Teamsters Fund so that benefits are paid to beneficiaries of the former only to the extent it was funded in 1976.
 
 
 22
 This argument is without merit. A "partial termination" within the meaning of section 411(d)(3) is primarily a tax event. It may occur where a significant number of employees are excluded from a plan or where, as here, there is a significant reduction in employer contributions. See Treas.Reg. Sec. 1.401-6(b)(2) (1988); see also Weil v. Retirement Plan Administrative Committee for the Terson Co., 750 F.2d 10, 13 (2d Cir.1984). Section 411(d)(3) requires that tax qualified plans make certain provisions for vesting of accrued benefits in the event of a partial termination. ERISA requires the plan administrator to report a partial termination to the PBGC. See 29 U.S.C. Sec. 1343(a) (1982). Thus, a plan's treatment of partial termination has consequences for its tax status and partial termination is itself a reportable event under ERISA. But partial termination does not mean that the plan itself goes out of existence. ERISA makes absolutely clear that partial termination "does not, by itself, constitute or require a termination of a plan." 29 U.S.C. Sec. 1343(b)(4) (1982) (emphasis added). See also Chait v. Bernstein, 835 F.2d 1017, 1020-21 (3d Cir.1988); United Steelworkers v. Harris & Sons Steel Co., 706 F.2d 1289, 1300 (3d Cir.1983). Rather, partial termination of a plan that contains the provisions required by section 411(d)(3) accelerates vesting of accrued pension benefits. Moreover, partial termination for tax purposes does not cause a corresponding portion of the plan to be spun off or terminated. See Harris & Sons Steel, 706 F.2d at 1300.
 
 
 23
 Because partial termination within the meaning of section 411(d)(3) does not alone result in a pension plan's partial extinction, then it naturally follows that the trustees of a plan are under no fiduciary obligation to extinguish a portion of the plan under such circumstances. Accordingly, we reject the Participants' argument that the Teamsters Fund Trustees have breached any fiduciary obligation in failing to terminate or segregate the Brewery Fund in response to the IRS' finding of partial termination.
 
 
 24
 Finally, the Participants contend that the Trustees have a fiduciary duty to stop paying benefits to Brewery Fund beneficiaries once the assets of the Brewery Fund are exhausted. This contention also rests on section 411(d)(3), under which a pension plan must provide that employees' accrued pension rights vest "to the extent funded" upon partial termination. The Participants conclude that this provision means that accrued rights vest only to the extent funded, and that it is therefore improper to pay benefits in excess of the assets in the partially terminated Brewery Fund. Cf. Weil, 750 F.2d at 13 (citing section 411(d)(3) and noting that parties claiming benefits under partially terminated fund "must demonstrate funding of the benefits they seek").
 
 
 25
 The meaning of the term "funded" is far from clear, however. It is an actuarial term of art. As the IRS' 1985 Technical Advice Memorandum notes, a qualified plan must be "funded," but
 
 
 26
 failure to fund at a particular level does not disqualify a plan. Minimum funding requirements for qualified plans are provided in [I.R.C.] section 412, not in the qualification provisions of the Code, and failure to meet those minimum funding requirements results in imposition of an excess tax on the employers under [I.R.C.] section 4971, not loss of plan qualification. (See Anthes v. Commissioner, 81 T.C. 1 (1983), [aff'd mem., 740 F.2d 953 (1st Cir.1984).]
 
 
 27
 J.App. 46 (emphasis added). It therefore appears that underfunding of a plan, without more, affects only the tax treatment of the plan and of contributions to it.
 
 
 28
 We need not delve further into the actuarial minutiae of pension plan funding and taxation, however, to resolve the question of fiduciary duty presented by this appeal. We are convinced that possible underfunding of the merged plan does not place the Trustees under a fiduciary obligation to cease payments to Brewery Fund beneficiaries. Indeed, by virtue of the orders of the New York courts, the Brewery Fund has been fully merged into the Teamsters Fund and the Trustees have a fiduciary relationship to the beneficiaries of the Brewery Fund as well as to the Participants. We are not persuaded that under these circumstances ERISA or the I.R.C. compel the Trustees to prefer one group of beneficiaries over the other.
 
 CONCLUSION
 
 29
 For the foregoing reasons, we affirm the district court's dismissal of the Participants' complaint. In light of this disposition, we do not reach the Participants' claim for injunctive relief.
 
 
 
 [1]
 The Participants did not allege any pendent state law claim for breach of fiduciary duty based on the actions of the Trustees' predecessors before January 1, 1975
 
 
 [2]
 The Participants also contended below and maintain here that the Trustees' conduct violates the Labor Management Relations Act of 1947. The Participants rely on 29 U.S.C. Sec. 186 (1982 & Supp. IV 1986), which proscribes payments by employers to employees, employee representatives or labor organizations. See 29 U.S.C. Sec. 186(a). The purpose of this proscription is "to protect the collective bargaining process by eliminating the corruptive influence of side payments by employers to union representatives." See Haley v. Palatnik, 509 F.2d 1038, 1040 (2d Cir.1975). The statute also provides an exception for payments by an employer to trust fund pension plans "for the sole and exclusive benefit of the employees of such employer." See 29 U.S.C. Sec. 186(c)(5). The Participants argue that the Trustees' use of Teamsters Fund assets to pay benefits to Brewery Fund beneficiaries constitutes a "structural" violation of this provision in the sense that the assets of the Teamsters Fund are not being used "for the sole and exclusive benefit of the employees" as section 186(c)(5) requires
 Federal courts have jurisdiction to remedy such "structural" defects in section 186(c)(5) trusts. See Local 50, Bakery and Confectionery Workers Union v. Local 3, Bakery and Confectionery Workers Union, 733 F.2d 229, 234 (2d Cir.1984). The Participants cannot prevail, however, if they merely seek to litigate their claim of breach of fiduciary duty under section 186: a simple breach of fiduciary duty in the administration of a pension trust covered by section 186(c)(5) does not amount to a "structural" defect. See Haley, 509 F.2d at 1040.
 We are not convinced that it is a structural violation of section 186(c)(5) to pay benefits to Brewery Fund beneficiaries who, by virtue of the New York courts' orders, are members of the merged Teamsters Fund. The possibility that such payments may affect the fund's solvency is more properly an issue of trust administration and therefore an ordinary matter of fiduciary duty not litigable under section 186. In light of the Participants' inability to articulate an analysis that would elevate the circumstances of this case to the level of a true "structural" defect under section 186(c)(5), we hold that they have failed to state a claim on this theory.