**Thomas ROCCO and Dorothy Casey, individually and on behalf of the Estate of Patrick F. Casey, On behalf of themselves, The Pension Plan of the Brewery Workers Pension Fund, or alternatively, on Behalf of all other persons similarly situated, Plaintiffs–Appellants–Cross–Appellees,**

v.

**NEW YORK STATE TEAMSTERS CONFERENCE PENSION AND RETIREMENT FUND, the board of trustees of the pension plan, Defendants–Appellees–Cross–Appellants,**

**David A. Seitz, Plaintiff.**

**Docket Nos. 01–7519(L), 01–7571(XAP).**

United States Court of Appeals, Second Circuit.

Argued Nov. 21, 2001.

Decided Feb. 13, 2002.

---

Edgar Pauk, New York, NY, (Susan Martin, Martin & Bonnett PLLC, of counsel), for Plaintiffs–Appellants–Cross–Appellees.

Vincent M. DeBella, Paravati, Karl, Green & DeBella, Utica, NY, for Defendants–Appellees–Cross–Appellants.

Before: KEARSE, CALABRESI, and KATZMANN, Circuit Judges.

KATZMANN, Circuit Judge.

This case, like many before it, traces its roots to the troubled merger of two pension funds, the Brewery Workers Pension Fund ("Brewery Fund") and the New York State Teamsters Conference Pension and Retirement Fund ("Teamsters Fund"). See, e.g., Baum v. Nolan, 853 F.2d 1071 (2d Cir.1988), cert. denied, 489 U.S. 1053, 109 S.Ct. 1313, 103 L.Ed.2d 582 (1989); Wenzel v. Commissioner, 707 F.2d 694 (2d Cir.1983); New York State Teamsters Conference Pension and Ret. Fund v. Pension Benefit Guaranty Corp., 591 F.2d 953 (D.C.Cir.), cert. denied, 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37 (1979) (hereinafter "PBGC"). In their Amended Complaint, plaintiffs Thomas Rocco and Dorothy Casey contend that defendant, the Board of Trustees of the Teamsters Fund ("Board of Trustees"), wrongfully delayed the effective date of the merger, and is now relying on that delayed effective date to deny plaintiffs the increased pension benefits they expected under the terms of the merger. The United States District Court for the Northern District of New York (Munson, J.) granted defendant's motion for summary judgment and dismissed plaintiffs' Amended Complaint in its entirety. The district court concluded that the wrongful conduct alleged by plaintiffs predates the effective date of the Employment Retirement Income Security Act of 1974 ("ERISA") and thus is not actionable under that statute. See Seitz v. Bd. of Trustees, 2000 WL 31978 (N.D.N.Y. Jan.7, 2000) ("Seitz I"). Plaintiffs moved for reconsideration. In response, the district court affirmed its order of dismissal and further concluded that, contrary to plaintiffs' assertion, the Amended Complaint failed to plead pendent claims under New York common law. See Seitz v. Bd. of Trustees, 2000 WL 748102 (N.D.N.Y. June 9, 2000) ("Seitz II"). Thereafter, the Board of Trustees moved for attorney's fees and costs, but this motion was denied. See Seitz v. Bd. of Trustees, No. 97 Civ. 232, Memorandum–Decision & Order (N.D.N.Y. Mar. 30, 2001) ("Seitz III"). Both parties now appeal the district court's respective decisions against them. For the reasons that follow, we affirm.

## I. BACKGROUND

### A. *Factual Background*

The facts surrounding the merger of the Brewery Fund and Teamsters Fund have been described numerous times by this and other Courts, and are not disputed by the parties. *See, e.g., Baum,* 853 F.2d at 1072–1074; *PBGC,* 591 F.2d at 954–55; *New York State Teamsters Conference Pension and Ret. Fund v. Hoh,* 554 F.Supp. 519, 521–525 (N.D.N.Y.1982); *Cicatello v. Brewery Workers Pension Fund,* 434 F.Supp. 950, 952–53 (W.D.N.Y.1977). The starting point for all these cases is the Agreement and Plan of Integration ("Merger Agreement") executed by representatives of the Brewery Fund and Teamsters Fund on July 30, 1973 and August 7, 1973 respectively. The Merger Agreement provided, *inter alia,* that upon approval of the merger by the Internal Revenue Service ("IRS"), the Brewery Fund would merge into the Teamsters Fund, with the assets of the former transferred and assigned to the trustees of the latter. *See* Merger Agreement, Art. IV, § 1. The Teamsters Fund would thereafter receive all employer contributions formerly paid to the Brewery Fund and would pay out benefits to current and future participants and beneficiaries of the Pension Plan of the Brewery Fund ("Brewery Plan"). *See id.,* Art. IV, § 5. Under the terms of the Merger Agreement, members of the Brewery Fund could elect either to continue receiving benefits under the terms of the Brewery Plan or, subject to certain conditions, receive benefits under the preexisting Pension Plan of the Teamsters Fund ("Teamsters Plan"). Depending on various factors, benefits received under the Teamsters Plan could be greater than benefits received under the Brewery Plan. Eligibility to elect Teamsters Plan benefits, however, was limited by the terms of the Merger Agreement to current and active members of the Brewery Plan for whom contributions were made to the Teamsters Fund after the effective date of the Merger Agreement. *See id.,* Art. III, § 3(e). Said "effective date" was defined as thirty days after notification of IRS approval. *See id.,* Art. III, § 1.

The Merger Agreement required that an application for IRS approval be made "forthwith." *See id.,* Art. IX. But rather than seeking such approval, defendant Board of Trustees instead attempted to repudiate the Merger Agreement on the grounds that soon after the agreement was signed, Rheingold Brewery, a major contributor to the Brewery Fund, terminated operations and laid off approximately 1500 workers, thereby threatening the Brewery Fund's financial solvency. After receiving notice that the Board of Trustees would not proceed with the merger, representatives of the Brewery Fund brought suit in New York State Supreme Court, Queens County, to compel performance. On April 29, 1975, the New York Supreme Court declared that, despite the closure of the Rheingold Brewery and changed economic circumstances, the Merger Agreement remained valid and binding. The court also ordered specific performance of the Merger Agreement by the Board of Trustees, including the filing of an application for approval with the IRS. *See Brewery Workers Pension Fund v. New York State Teamsters Conference Pension and Ret. Fund,* No. 9997/74, J. & Order at 2 (N.Y.Sup.Ct. Apr. 29, 1975). The lower court's judgment was unanimously affirmed by the Appellate Division, *see* 49 A.D.2d 755, 374 N.Y.S.2d 590 (2d Dep't 1975), and leave to appeal was thereafter denied by the New York Court of Appeals. *See* 38 N.Y.2d 709, 382 N.Y.S.2d 1028, 346 N.E.2d 558 (1976). Nevertheless, the Board of Trustees did not undertake performance of the Merger Agreement or

seek IRS approval, but chose instead to pursue other means of challenging the merger. *See PBGC*, 591 F.2d at 957.

Rather than waiting for the Board of Trustees to exhaust its legal remedies, the Brewery Fund sought IRS approval itself, filing the necessary application on April 29, 1976. Five months later, on September 28, 1976, the District Director of the IRS in Buffalo, New York, sent a letter to the Board of Trustees, informing it that the merger had been approved. Thereafter, the Brewery Fund transferred all its assets to the Teamsters Fund, effective December 1, 1976. The Board of Trustees objected to the manner in which IRS approval had been obtained, refused to recognize the transfer or accept the assets, and sought reconsideration by the IRS, which was denied. Consistent with past practice, the Board of Trustees went back to the courts and launched a series of challenges to the IRS approval, all of which proved unsuccessful. *See, e.g., Wenzel, supra; New York State Teamsters Conference Pension and Ret. Fund v. Commissioner*, 90 T.C. 862, 1988 WL 42902 (U.S.Tax Ct.1988).

While the Board of Trustees sought to overturn the IRS approval, representatives of the Brewery Fund returned to state court and, on May 1, 1975, moved to compel compliance with the original order of specific performance and for a declaration that the pension funds were now integrated. On April 12, 1977, the New York Supreme Court, Queens County, declared that the Brewery Fund "is now and has been since December 1, 1976 fully integrated with [the Teamsters Fund]" and ordered, *inter alia*, the Board of Trustees "forthwith" to accept assignment of the Brewery Fund's assets and property, assume the financial obligations of the Brewery Fund, pay all benefits due under the Brewery Plan, and notify active members of the Brewery Fund of their right to elect Teamsters Plan benefits. *See Brewery Workers Pension Fund v. New York State Teamsters Conference Pension and Ret. Fund*, No. 9997/74, Order & Supplemental J. 2–4 (N.Y.Sup.Ct. Apr. 12, 1977). When the Board of Trustees continued to challenge the validity of the merger, the New York Supreme Court entered an order of contempt on September 19, 1977, fining the Board of Trustees but allowing it to purge the contempt within five days. *See Brewery Workers Pension Fund v. New York State Teamsters Conference Pension and Ret. Fund*, No. 9997/74, Final Order Upon Contempt Proceedings at 5 (N.Y.Sup.Ct. Sept. 19, 1977). Another round of legal action ensued in the state court, resulting, on October 19, 1978, in a second finding of contempt and an order of imprisonment and fines for members of the Board of Trustees. The state court concluded that the Board of Trustees had not made a "good faith" effort to comply with the original contempt order, citing numerous deficiencies in the notice of election rights that the Board of Trustees distributed to members of the Brewery Fund one year after entry of the original contempt order. *See Brewery Workers Pension Fund v. New York State Teamsters Conference Pension and Ret. Fund*, No. 9997/74, Mem. at 18–19 (N.Y.Sup.Ct. Oct. 19, 1978). After further negotiations, a revised notice was eventually distributed in June 1979.

## B. *Procedural Background*

Plaintiff-appellant Dorothy Casey is the widow of Patrick Casey, who was a participant in the Brewery Plan and who retired on a disability pension effective February 1, 1976. In July 1992, plaintiff Casey, who theretofore had been collecting her deceased husband's pension under the Brewery Plan, applied to the Teamsters Fund for coverage under the Teamsters Plan.

By letter dated July 14, 1992, the Board of Trustees denied her application on the grounds that "no contributions were made on [Mr. Casey's] behalf after December 1, 1976 and he was not a participant of the New York State Teamsters Pension Plan." Plaintiff-appellant Thomas Rocco, Jr. ceased employment in the brewing industry on March 26, 1976 and thereafter collected benefits under the Brewery Plan. He, too, applied for Teamsters Plan benefits and, by letter dated November 11, 1993, was denied on the grounds that "to be eligible for [Teamsters Plan benefits], a member must have worked past December 1976." [1]

Plaintiffs thereafter brought suit in federal court, seeking a declaration "that by its contumacious conduct in breaching the Merger Agreement, the Board of Trustees waived its right to a delayed effective date of the Merger Agreement, and that, therefore, the merger became effective upon its execution on August 7, 1973." Am. Compl., ¶ 4. In the alternative, plaintiffs sought to establish a "constructive" effective date of February 6, 1974—approximately six months after the Merger Agreement was executed. According to plaintiffs, this date was appropriate because, once IRS approval was finally sought, "it took the IRS five months to approve the merger" and "the Merger Agreement was to become effective 30 days after such approval." Id. ¶ 5. Plaintiffs also sought injunctive relief to enforce compliance with these declarations.

In their Amended Complaint, plaintiffs cite § 404(a) of ERISA, which requires a pension plan fiduciary to administer the plan for the sole benefit of the plan participants and beneficiaries and to provide benefits "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a). Most of plaintiffs' claims for relief are based on the assertion that the Board of Trustees did not adhere to the terms of the Merger Agreement in "refusing ... to provide Brewery Plan participants actively employed or with vested rights on or after August 7, 1973, and their beneficiaries, with benefits equal to those available to the Teamsters Plan participants." Am. Compl., ¶ 69. Plaintiffs contend that by violating the terms of the Merger Agreement, defendants violated ERISA and the fiduciary duties established under § 404(a). See id. ¶¶ 71, 73, 75. Plaintiffs also assert what they label "pendent" claims for relief, which state that the Board of Trustees breached its "common law" fiduciary and contractual duties by "failing to comply with the terms of the Merger Agreement." Id. ¶¶ 78, 79.

On March 31, 1998, plaintiffs moved for partial summary judgment on their ERISA claims, arguing that "federal courts have adopted as federal common law the principle that ERISA does not permit a party to profit from its own wrong." Mem. Law in Support of Pls.' Mot. for Partial Summ. J., at 11. In response, the Board of Trustees filed its own cross-motion for summary judgment, seeking dismissal on the grounds that the conduct of which plaintiffs complain, namely, the breach of the Merger Agreement, occurred prior to the enactment of ERISA and thus is not actionable under that statute. The district court agreed with the Board of Trustees, pointing out that in *PBGC*, the United States Court of Appeals for the District of Columbia had previously held that the execution and repudiation of the Merger Agreement occurred prior to ERISA's effective date. *See Seitz I*, 2000 WL 31978, at *4 (citing *PBGC*, 591 F.2d at 957). In light of the fact that " 'courts

---

**1.** A third plaintiff below, David Seitz, does not join in this appeal because his claims were settled by stipulation, so-ordered by the district court on July 17, 2000.

have uniformly rejected the theory that pre-ERISA acts are actionable under ERISA [even] if they generate consequences after ERISA's effective date,' " *id.* (quoting *Baum,* 853 F.2d at 1075 (alteration omitted)), the district court dismissed plaintiffs' case in its entirety, finding that plaintiffs had alleged no other basis for federal jurisdiction.

Plaintiffs moved the district court for reconsideration, arguing that the court committed "clear error" in three ways. *First,* plaintiffs argued that the district court had misconstrued the Amended Complaint in that the misconduct that formed the basis of the action was not defendant's repudiation of the Merger Agreement, but its subsequent decision to use the delayed effective date of the merger to deny plaintiffs benefits under the Teamsters Plan. *See Seitz II,* 2000 WL 748102, at *1. The district court rejected this argument, finding that the Amended Complaint sought to establish an earlier effective date for the Merger Agreement in order to cure the effects of defendant's repudiation of that agreement, specifically, the denial of plaintiffs' request for Teamsters Plan benefits. It was therefore the repudiation that was the conduct at issue in the Amended Complaint, not the denial itself. *See id.* at *2.

*Second,* plaintiffs argued that the district court erred in finding that plaintiffs' had no other basis for a claim under ERISA because plaintiffs, as "participants" in the Teamsters Plan, were entitled to sue for a review of benefit decisions. Again, the district court rejected plaintiffs' argument, finding that because plaintiffs were not eligible for Teamsters Plan benefits, they did not fall under ERISA's definition of "participants." *See id.* at *2–*3 (citing 29 U.S.C. § 1002(7)). *Third,* and finally, plaintiffs argued that the district court erred in dismissing the Amended Complaint in its entirety because defendant never sought dismissal of plaintiffs' "pendent" state law claims. The district court concluded, however, that plaintiffs had not brought state law claims and had not asserted jurisdiction or raised arguments under New York law prior to their motion for reconsideration, thus preventing any finding of "clear error." *See id.* at *3.

Defendant thereafter moved for attorney's fees and costs under ERISA's "fee shifting" provision, 29 U.S.C. § 1132(g)(1). The district court found that such an award was inappropriate because plaintiffs' claims were dismissed not only on the merits but for lack of subject matter jurisdiction as well. *See Seitz III, supra,* at 5.

The instant appeal ensued, with plaintiffs challenging dismissal of their Amended Complaint and defendant seeking reversal of the district court's decision on attorney's fees.

## II. DISCUSSION

We review the district court's grant of summary judgment *de novo. See, e.g., Brown v. C. Volante Corp.,* 194 F.3d 351, 354 (2d Cir.1999), *cert. denied,* 529 U.S. 1004, 120 S.Ct. 1268, 146 L.Ed.2d 218 (2000). On appeal, plaintiffs assert substantially the same arguments as they pressed in their motion for reconsideration below. We conclude that plaintiffs' Amended Complaint failed to state an actionable claim under ERISA and that dismissal of plaintiffs' Amended Complaint in its entirety was appropriate. As for defendant's motion for fees and costs, we affirm the district court's decision on an alternative ground.

### A. *Plaintiffs' ERISA Claims for Breach of Fiduciary Duty*

Sections 514(a) and (b) of ERISA provide that, as of January 1,

1975, ERISA preempts state law concerning employee benefit plans, except that such preemption "shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975." 29 U.S.C. §§ 1144(a), 1144(b)(1). Thus conduct that occurred before the effective date of ERISA is not actionable under that statute. *See, e.g., Malone v. White Motor Corp.*, 435 U.S. 497, 499 n. 1, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978); *Baum*, 853 F.2d at 1075. Plaintiffs acknowledge this rule, but argue that it does not apply to their case because they are not challenging defendant's pre-ERISA conduct, *i.e.* the conduct that led to the delayed effective date of the Merger Agreement, but only defendant's post-ERISA refusal to take into consideration the wrongfulness of that conduct when determining plaintiffs' eligibility for Teamsters Plan benefits. In other words, plaintiffs claim merely to seek review of defendant's 1992 denial of their respective applications for Teamsters Plan benefits.

Plaintiffs' argument ignores the text of the Amended Complaint, which explains that "[p]laintiffs seek a declaration that by its contumacious conduct in breaching the Merger Agreement, the Board of Trustees waived its right to a delayed effective date of the Merger Agreement, and that, therefore, the merger became effective upon its execution on August 7, 1973." Am. Compl., ¶ 4. This clear statement of intent indicates that plaintiffs brought their suit to do more than simply challenge defendant's 1992 eligibility decision as erroneous or invalid; rather, they sought to obtain Teamsters Plan benefits for themselves and those "similarly situated"[2] by establishing a new "effective date" for the

Merger Agreement, based on the wrongfulness of defendant's "contumacious" efforts to repudiate that Agreement—efforts that began in 1974. *See also* Mem. Law in Support of Plaintiffs' Motion for Partial Summ. J., at 1 ("The motion seeks to establish that the effective date of the merger between the Brewery and the Teamsters Pension Funds was February 11, 1974, rather than December 1, 1976."). Accordingly, plaintiffs' action *does* arise from pre-ERISA conduct and seeks redress for the continuing consequences of that conduct.

We have previously held "that ERISA will not apply where a denial of benefits after January 1, 1975, was merely the 'inexorable consequence' of a pre–1975 'act or omission.'" *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1189 (2d Cir.1996) (quoting *Lamontagne v. Pension Plan of the United Wire, Metal & Mach. Pension Fund*, 869 F.2d 153, 155–56 (2d Cir.1989)). Plaintiffs argue that defendant's decision to deny them Teamsters Plan benefits was "discretionary" and thus not an *inexorable* consequence of defendant's pre-ERISA conduct. Plaintiffs contend that defendant had the authority, if not the responsibility, to consider that plaintiffs would otherwise have qualified for Teamsters Plan benefits under the terms of the Merger Agreement but for the delay in the effective date caused by defendant's own wrongful conduct.

Plaintiffs cite *Jiras v. Pension Plan, Make–Up Artist & Hairstylists Local 798*, 170 F.3d 162, 166 (2d Cir.1999), which distinguished the *Lamontagne* and *Nowak* cases on the ground that the benefits-eligibility decision at issue in that case

---

**2.** We note that plaintiffs asserted "alternative" class action claims in their Amended Complaint, purporting to bring their action "on behalf of all similarly situated participants in the Brewery plan and their beneficiaries." Am. Compl., ¶ 65. The district court dismissed plaintiffs' case before class certification was considered.

involved an exercise of discretion, after 1975, "to resolve disputed factual and legal questions" and was not "dictated by the application of undisputed law to undisputed facts." Unlike in *Jiras*, however, there is no interpretative dispute over the conditions of eligibility for Teamsters Fund benefits. The Merger Agreement clearly and unequivocally provides that to be eligible for such benefits, the applicant must have had contributions made on his or her behalf after the "effective date" of the Merger Agreement. That "effective date," in turn, was long ago determined by the New York Supreme Court to be December 1, 1976, in a decision that was affirmed by the Appellate Division. Subsequent courts have recognized this decision as imposing an effective date of December 1, 1976. *See, e.g., Baum,* 853 F.2d at 1073; *Geib v. New York State Teamsters Conference Pension & Ret. Fund,* 758 F.2d 973, 974 (3d Cir.1985); *Miele v. Pension Plan of New York State Teamsters Conference Pension & Ret. Fund,* 72 F.Supp.2d 88, 92 (E.D.N.Y.1999); *New York State Teamsters Conference Pension and Ret. Fund v. Hoh,* 561 F.Supp. 679, 681 (N.D.N.Y.1982). It is uncontested that no contributions were made to the Teamsters Fund on plaintiffs' behalf after December 1, 1976, and thus, by the terms of the Merger Agreement, plaintiffs were not eligible for benefits. With the "effective date" of the Merger Agreement defined by various courts, defendant simply did not possess the "discretion" to grant Teamsters Plan benefits to plaintiffs and those similarly situated, without also incurring potential fiduciary liability to valid participants in the Teamsters Plan for ignoring the terms of the Merger Agreement. Although we appreciate plaintiffs' frustration, the fact is that defendant's pre-ERISA conduct led to a delayed effective date for the Merger Agreement, and the denial of plaintiffs' application for Teamsters Plan benefits is simply the "inexorable consequence" of that conduct, and thus beyond the reach of ERISA.

As a fallback argument, plaintiffs contend that defendant has a continuing obligation to cure the present effects of its past fiduciary breaches, even where those breaches occurred prior to the effective date of ERISA. According to plaintiffs, defendant's continuing refusal to grant them increased Teamsters Plan benefits constitutes a "new," post-ERISA violation of fiduciary duty. Plaintiffs' argument, however, is foreclosed by *Baum,* in which participants in the Teamsters Plan sued members of the Board of Trustees for the alleged breach of fiduciary duty of *entering into* the Merger Agreement without first making adequate inquiries into the financial soundness of the Brewery Fund. *See Baum,* 853 F.2d at 1075. In that case, the participants argued that even though the original fiduciary breach (*i.e.* the execution of the Merger Agreement) occurred before ERISA, it "taint[ed] subsequent and current payments of benefits to brewery workers pursuant to the agreement." *Id.* We rejected this "continuing breach" argument, finding that it would render meaningless the limitation on preemption imposed by section 514(b) of ERISA, 29 U.S.C. § 1144(b). *See Baum,* 853 F.2d at 1075. The same is true in the case at hand, because the "continuing breach" argument advanced by plaintiffs, if accepted, would allow plaintiffs to obtain redress under ERISA for pre-ERISA conduct, something squarely prohibited by § 514(b). While plaintiffs continue to suffer the consequences of that conduct to this day, it is nevertheless beyond the reach of ERISA.

B. *Plaintiffs' Claims to "Participant" Status*

 Plaintiffs assert that even if their claims are not actionable under section

404(b) of ERISA, they may still bring an action under section 502(a) of that statute, which empowers "participants" in employee benefit plans to bring civil actions to recover benefits owed to them under the terms of the plan. *See* 29 U.S.C. § 1132(a). Here, plaintiffs claim to be "participants" in the Teamsters Plan or, at the very least, to have a sufficiently "colorable" claim to Teamster Plan benefits so as to confer "participant" status upon them. As the district court concluded, however, plaintiffs do not qualify as "participants" under ERISA, which defines the term as "any employee or former employee of an employer ... *who is or may become eligible* to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries *may be eligible* to receive any such benefit." 29 U.S.C. § 1002(7) (emphasis added). The Supreme Court has explained that "[i]n order to establish that he or she 'may become eligible' for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117–18, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Since we have already found that plaintiffs are not eligible for Teamster Plan benefits under the terms of the Merger Agreement (having had no contributions to the Teamsters Fund made on their behalf after December 1, 1976), it is clear that plaintiffs do not have a "colorable claim" to such benefits, and thus cannot be considered "participants" in the Teamsters Plan.

Plaintiffs nevertheless argue that because they *are* "participants" in the *Brewery Plan*, with vested rights to benefits thereunder, they are also "participants" in the Teamsters *Fund* by reason of its integration with the Brewery Fund on December 1, 1976. Although ERISA defines an "employee pension benefit plan" as "any plan, *fund*, or program" which is established to provide retirement income to employees, 29 U.S.C. § 1002(2) (emphasis added), this definition provides no reason to ignore the fact that the Merger Agreement does not use the terms "plan" and "fund" interchangeably and clearly provides for the continuation of two separate employee benefit *plans* after the merger, namely, the Brewery Plan and the Teamsters Plan. Although the underlying "funds" were merged, the plans remained distinct, with separate terms and conditions. Because plaintiffs are not eligible for Teamster Plan benefits under the Merger Agreement, they are not "participants" in the Teamsters Plan, the terms of that Plan do not apply to them, and, therefore, they may not maintain an action under section 502(a) of ERISA to recover benefits due to them or to enforce their rights "under the terms" of the Teamsters Plan. 29 U.S.C. § 1132(a)(1).

## C. *Plaintiffs Did Not Plead State Law Claims*

In granting defendant's motion for summary judgment, the district court dismissed the Amended Complaint in its entirety. *See Seitz I*, 2000 WL 31978, at *4. Plaintiffs contend that the district court erred because the Amended Complaint pleaded four claims under New York common law (claims six through nine) and that such claims were not encompassed by defendant's motion for summary judgment, which only concerned plaintiffs' ERISA claims. The district court denied plaintiffs' motion for reconsideration, explaining that it was entirely unclear whether the Amended Complaint brought state law claims—despite the fact that these claims were expressly labeled as "pendant claims." *See Seitz II*, 2000 WL 748102, at

*3. On appeal, plaintiffs contend that the district court's exercise of supplemental jurisdiction over their state law claims is "mandatory." Plaintiffs' Brief on Appeal, at 32 (internal quotation marks omitted). However, in light of the fact that no federal claims remain in this case, the district court is not required to retain jurisdiction of state law claims. *See* 28 U.S.C. § 1367(c)(3). Additionally, given the absence of federal claims, remand·to the district court to exercise supplemental jurisdiction is not warranted. *See, e.g., Grace v. Rosenstock,* 228 F.3d 40, 55 (2d Cir. 2000); *Fay v. South Colonie Cent. Sch. Dist.,* 802 F.2d 21, 34 (2d Cir.1986).

### D. *Defendant's Motion for Attorney's Fees*

The district court concluded that an award of fees to defendant was inappropriate under section 502(g) of ERISA, 29 U.S.C. § 1132(g), because the Amended Complaint was dismissed for lack of jurisdiction. *See Seitz III, supra,* at 5 (citing *W.G. v. Senatore,* 18 F.3d 60, 64 (2d Cir. 1994)). Defendant argues that the district court erred, since dismissal of claims under ERISA's preemption provision, 29 U.S.C. § 1144(b)(1), is to be considered a "dismissal under Rule 12(b)(6) for failure to state a claim, not for lack of jurisdiction." *Jiras,* 170 F.3d at 165 (citing *Nowak,* 81 F.3d at 1191). Defendant thus requests remand to the district court for reconsideration under the five-factor test articulated in *Chambless v. Masters, Mates & Pilots Pension Plan,* 815 F.2d 869, 871 (2d Cir.1987).

 In denying defendant's motion, the district court explained that it dismissed plaintiffs' Amended Complaint not only for plaintiffs' failure to bring an actionable claim for breach of fiduciary duty under ERISA, but also for plaintiffs' concomitant failure to assert any *alternative* basis for jurisdiction. *See Seitz I,* 2000 WL 31978, at *4. Defendant correctly points out, however, that no such "alternative" basis for jurisdiction was necessary for consideration of its motion for attorney's fees, because the district court did, in fact, have jurisdiction over plaintiffs' ERISA claims, even though those claims proved to be inactionable under ERISA. Such jurisdiction was sufficient to permit consideration of defendant's motion for fees. Nevertheless, we have held that a party who succeeds in defeating a claim that ERISA is applicable is not entitled to attorney's fees under ERISA for defending that claim. *See Trans World Airlines, Inc. v. Sinicropi,* 84 F.3d 116, 117 (2d Cir.) (per curiam), *affirming* 887 F.Supp. 595, 617 (S.D.N.Y.1995) (denying award of fees requested pursuant to § 1132(g)(1) where "the action [did] not arise under ERISA" and the "defendants prevailed because of the [Railway Labor Act], and the rights provided by ERISA had no bearing on this case"), *cert. denied,* 519 U.S. 949, 117 S.Ct. 360, 136 L.Ed.2d 252 (1996). Therefore, we affirm the district court's denial of attorney's fees on this alternative ground.

### III. CONCLUSION

Having considered all other arguments advanced by plaintiffs and defendants in support of their respective appeals, we find them to be without merit. For the foregoing reasons, we affirm the judgment of the district court.