**Harris COHEN, Plaintiff-Appellant,**

v.

**MARTIN'S, a New York Corporation, Defendant-Appellee.**

**No. 277, Docket 82–7401.**

United States Court of Appeals, Second Circuit.

Argued Nov. 10, 1982.
Decided Nov. 29, 1982.

Neil A. Pollio, New York City (Phillips, Nizer, Benjamin, Krim & Ballon, New York City), for plaintiff-appellant.

David E. Nierenberg, New York City (Bondy & Schloss, I. Russell Stein, Mark A. Harmon, New York City, of counsel), for defendant-appellee.

Before KAUFMAN, TIMBERS and NEWMAN, Circuit Judges.

PER CURIAM:

■ Cohen appeals from a judgment dismissing his complaint which alleged that Martin's unlawfully terminated his retirement benefits. Cohen contends that his pension rights were vested and nonforfeitable pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461, although he retired before the relevant provisions of the Act became effective. Because we believe that the mandatory vesting standards of ERISA ap-ply only to persons who were actually employed on their effective date, here January 1, 1976, we affirm.

The relevant facts may be recounted briefly. Cohen retired in March 1973, after 43 years of service with Martin's, a New York corporation which operates a chain of department stores. Upon his departure Cohen became eligible to receive pension benefits under Martin's "Executive Compensation Plan." The plan was unfunded and subject to termination at any time. It provided that "[n]o employee shall obtain vested rights to any retirement benefits hereunder prior to or after retirement."[1] By virtue of his long tenure with Martin's, Cohen was eligible to receive maximum benefits under the plan, amounting to $8,000 a year, offset by his primary social security benefits.

Cohen actually received pension payments in excess of those provided for under the plan. Pursuant to an oral agreement and an April 28, 1969 letter from Wilbur Levin, then president of Martin's, Cohen received $1,150 a month. In October 1977 Martin's was sold to the Seedman Merchandising Group. Three months later the new board of directors of Martin's terminated the Executive Compensation Plan "[d]ue to the suffering of substantial losses by the Company."

In May 1978 Cohen filed a complaint alleging unlawful termination of his pension benefits pursuant to the April 1969 letter from Levin. This complaint was dismissed without prejudice by Judge Stewart in an unpublished order. In July 1980 Cohen moved to amend his complaint to assert a claim pursuant to ERISA and Martin's Executive Compensation Plan. He contended that his pension rights were nonforfeitable under the Act's vesting provisions. Following a bench trial, Judge Edelstein found that Cohen was not an employee of Martin's on January 1, 1976, because he was not under the company's control and was not being compensated for his services.

---

1. The district court, 537 F.Supp. 766, found that Cohen had been involved in the administration of the plan and was fully familiar with its provisions.

The court also held that ERISA's mandatory vesting provisions covered only those who were employees when the qualifications became effective, and accordingly, Cohen was not afforded the protection of those provisions. Cohen does not dispute the district court's factual finding, but claims that ERISA's vesting requirements apply to persons who were receiving pensions on January 1, 1976, although no longer employees on that date.

ERISA is a "comprehensive and reticulated statute," which imposes a broad range of requirements on private pension plans. *Nachman Corp. v. Pension Benefit Guaranty Corp.,* 446 U.S. 359, 361, 100 S.Ct. 1723, 1726, 64 L.Ed.2d 354 (1980). Section 203 of the Act prescribes minimum vesting standards. "Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age...." 29 U.S.C. § 1053(a). The effective date of this section is governed by 29 U.S.C. § 1061(b)(2) which states that "in the case of a plan in existence on January 1, 1974, this part shall apply in the case of plan years beginning after December 31, 1975." Martin's plan was established prior to January 1974 and operated on a calendar year schedule. Accordingly, the provisions of § 1053(a) became effective in the plan year beginning January 1, 1976.

The vesting provisions speak of "an employee's right" to receive pension benefits. The term "employee" is defined as "any individual employed by an employer." 29 U.S.C. § 1002(6). The language of § 1053(a) therefore appears to restrict its scope to persons actually employed when it became effective. Other sections of the statute extend their coverage to plan "participants," which the Act defines as "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). Cohen was clearly a plan participant when

§ 1053(a) became effective, because he was receiving pension benefits from Martin's in January, 1976. He was not, however, an employee on that date.

Had Congress intended to extend the protections of the vesting requirements to retirees such as Cohen, it would have spoken of a "participant's right" to receive benefits. We will not lightly assume that Congress's choice of words, "an employee's right," was inadvertent. Indeed, an examination of ERISA's legislative history indicates that the language of § 1053(a) reflects a conscious decision to restrict its coverage to persons actually employed on January 1, 1976.

House and Senate committees considering the proposed legislation rejected the retroactive vesting rule which Cohen would have us adopt. "[I]t does not appear to be desirable to provide for retroactive vesting for employees who have already terminated their service with the employer, since this would create a substantial unexpected cost for the plan (thereby possibly jeopardizing the size of benefits for employees still covered under the plan) and might involve serious recordkeeping problems." H.Rep. No. 807, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639, 4723.[2] The Senate Committee on Labor and Public Welfare expressed similar views. "It should also be made clear, that the vesting benefits provided by this title are applicable only to those active employees who are covered by the plan on the effective date of the title ...." S.Rep. No. 127, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639, 4856.

Our reading of the scope of ERISA's vesting standards is shared by other courts which have considered this question. For example, in *Fremont v. McGraw-Edison Co.,* 606 F.2d 752, 755 (7th Cir.1979), *cert. denied,* 445 U.S. 951, 100 S.Ct. 1599, 63 L.Ed.2d 786, (1980), the court stated, "[w]e

**2.** In *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 515 n. 12, 101 S.Ct. 1895, 1902 n. 12, 68 L.Ed.2d 402 (1981), the Supreme Court observed that the vesting provisions of the bill considered in H.Rep. No. 807 were "substantially identical" to those in the version of ERISA which was ultimately adopted.

agree with the district court that § 203 only protects against forfeiture the benefits of those who are in an employee status on January 1, 1976 or thereafter." Similarly the court in *Ponce v. Construction Laborers Pension Trust*, 628 F.2d 537, 541 (9th Cir. 1980), held that ERISA's vesting provisions "protect only the pension rights of workers who were working at the beginning of the calendar year 1976, the effective date of the Act." *See also Kapuscinski v. Plan Administrator*, 658 F.2d 427, 429 (6th Cir.1981).

In challenging these decisions and the holding of the district court, Cohen relies primarily on our decision in *Riley v. MEBA Pension Trust*, 570 F.2d 406 (2d Cir.1977) ("*Riley I*"). Judge Friendly, writing for the panel, stated that Riley, who retired before January 1976, had a claim pursuant to ERISA for those monthly suspensions of his pension payments which occurred after that date. Cohen contends that *Riley I* establishes that an employee who retired before January 1976 has a claim under ERISA if his benefits are cut off after that date.[3] In fact, *Riley I* concerned neither the effective dates nor the applicability of § 1053(a). The issue before the court was the related but different question when Ri-

ley's benefits were terminated. Indeed, the parties raised the retroactivity problem for the first time when the case was appealed again after remand. Affirming the district court's grant of summary judgment against the plaintiff-retiree, the court noted, "[w]e did not *decide* on the first appeal that a member of a pension plan who had taken early retirement was entitled to the protection of § 203 of ERISA with respect to forfeitability; we simply *assumed* this since no one had argued otherwise." *Riley v. MEBA Pension Trust*, 586 F.2d 968, 970 (2d Cir.1978) (emphasis in original) ("*Riley II* "). Accordingly, Cohen's reliance on *Riley I* is misplaced.[4] We did not decide there that the vesting standards of ERISA applied to plan participants who retired before their effective date.[5]

Cohen also claims that the Supreme Court indicated that § 1053 applied retroactively in *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981). The court did not decide, however, whether retirement benefits which were not vested under a pension plan, became vested by virtue of retroactive application of § 1053(a).[6]

**3.** Cohen also relies on *Riley I* in support of his contention that, under some general principle of fairness, a forfeiture of his pension rights should not be allowed even if ERISA's vesting requirements do not apply. In *Riley I* the court stated in dicta, "[w]e need not decide whether in some truly shocking case a court might properly condemn the denial of a pension that would ... be contrary to the vesting provisions even though it preceded the effective date of [§ 1053(a) ]." *Riley I, supra*, 570 F.2d at 413. Other than this passing reference, there is no support for Cohen's proposition in either the legislative history or the case law. For whatever reasons, Congress limited the scope of the vesting provisions, and we are not free to expand their coverage.

**4.** Cohen's view of *Riley I* is supported by the court's decision in *Bonar v. Barnett Bank of Jacksonville, N.A.*, 488 F.Supp. 365, 370 n. 7 (M.D.Fla.1980). In *Bonar*, however, the court was apparently unaware of our subsequent decision in *Riley II*, and erroneously assumed that we had adopted a rule allowing retroactive application of the § 1053(a) vesting standards.

**5.** Our holding in *Pompano v. Michael Schiavone & Sons, Inc.*, 680 F.2d 911 (2d Cir.1982) is

also inapposite. In *Pompano* we considered the applicability and interpretation of ERISA's provisions which impose reporting requirements on pension plan trustees, and require those trustees to act as fiduciaries. 29 U.S.C. §§ 1021–22, 1101–14. These sections extend protection to pension plan beneficiaries, and accordingly, in *Pompano* we spoke of the rights of plan participants. *Pompano*, however, did not involve the Act's vesting provisions, and, indeed, we made no reference to § 1053(a) in that opinion. Our discussion of the rights of plan participants with regard to the sections of ERISA involved in that case, did not imply that other sections of the Act, specifically § 1053(a), also extend coverage to mere plan participants.

**6.** Our conclusion that the Supreme Court in *Alessi* did not pass on the issue of retroactive application of the vesting provisions is bolstered by the fact that the court's opinion did not make a single reference to *Fremont v. McGraw-Edison Co., supra, Ponce v. Construction Laborers Pension Trust, supra,* or any other cases which directly considered that issue.

In *Alessi* the Supreme Court held that a New Jersey law prohibiting employers from reducing retirement benefits by an amount equal to workers' compensation awards was preempted by ERISA.[7] The issue in the case, however, was not whether the pension plan beneficiaries had vested rights to their benefits, but rather what the scope of their admittedly vested benefits was. *Id.* 451 U.S. at 511, 101 S.Ct. at 1900. The court held that retirement benefits could be calculated by integrating funds available from other sources such as worker's compensation awards. This integration did not constitute a forfeiture within the meaning of § 1053(a), and that section did not apply. "The nonforfeiture provision of § 1053(a) has no more applicability to this kind of integration than it does to the analagous reduction permitted for Social Security or Railroad Retirement benefits." *Id.* at 516–17, 101 S.Ct. at 1902–1903.

The mere fact that the pensioners in *Alessi* had vested rights to their retirement benefits which were protected under ERISA, does not imply that the Act's vesting provisions may be retroactively applied. Plan participants may have vested rights to their retirement benefits independent of § 1053(a). The pension agreement itself may vest a participant's rights to his retirement benefits. In such cases ERISA still provides for a federal cause of action if those benefits are terminated. 29 U.S.C. § 1132(a)(1) provides that plan "participants" may bring actions for wrongful termination or forfeiture of their pension rights. In *Reiherzer v. Shannon,* 581 F.2d 1266 (7th Cir.1978) the plaintiff retired in 1968, and his application for benefits was rejected in 1974, after the effective date of § 1132. The court held that Reiherzer had a cause of action under ERISA, not because his rights were vested pursuant to § 1053(a), but because ERISA provided a federal forum for a forfeiture claim concerning rights vested under the pension plan agreement. *See Van Fossan v. International Brotherhood of Teamsters,* 649

F.2d 1243, 1247 (7th Cir.1981). The fact that a cause of action may lie under ERISA for wrongful termination of already vested benefits, as in *Alessi* and *Reiherzer,* does not imply that the Act's vesting provisions may be applied retroactively.

■ Cohen's retirement benefits were not vested by his pension plan agreement with Martin's. The plan explicitly excluded this possibility. Our reading of the Act's legislative history, and indeed the language of § 1053(a), leads us to conclude that Cohen's pension rights did not become vested and nonforfeitable when § 1053(a) became effective in January 1976. ERISA's vesting provisions do not apply retroactively to persons such as Cohen who terminated their employment before the Act became effective. Accordingly, Cohen had no vested rights to his pension benefits, and his complaint was properly dismissed.

Affirmed.

---

**7.** Section 514(a) of the Act, 29 U.S.C. § 1144(a) states that ERISA "shall supersede any and all State laws insofar as they may now or hereaf-

ter relate to any employee benefit plan described in section 1003(a) of this title."