Joseph L. LAMONTAGNE,
Plaintiff–Appellant,

v.

PENSION PLAN OF THE UNITED WIRE, METAL & MACHINE PENSION FUND, The Board of Trustees of the United Wire, Metal & Machine Pension Fund, Defendants–Appellees.

No. 510, Docket 88–7703.

United States Court of Appeals,
Second Circuit.

Argued Dec. 15, 1988.
Decided Feb. 24, 1989.

vacating of Klan's conviction, we will address this issue in subsequent proceedings.

Edgar Pauk, (Legal Services for the Elderly, New York City), for plaintiff-appellant.

Arthur N. Lambert, New York City, for defendants-appellees (Brian M. Levy, Susan E. Jaffee, Lambert & Weiss, of counsel).

Before MESKILL, PIERCE and MINER, Circuit Judges.

PIERCE, Circuit Judge:

Joseph L. Lamontagne appeals from a judgment of the United States District Court for the Southern District of New York, Judge Mary Johnson Lowe, which dismissed his complaint on the grounds (1) that the district court lacked subject matter jurisdiction over his Employee Retirement Income Security Act ("ERISA") claims and (2) that his Taft–Hartley Act claim was time-barred. We affirm.

## BACKGROUND

The Pension Plan ("the Plan") of the United Wire, Metal & Machine Pension Fund ("the Fund"), as amended through 1970, in Article I, § 7, defines "Covered Employment" as employment in which the employee earns credit towards a pension to be supplied by the Fund. Lamontagne worked in covered employment as a machinist from 1954 to 1971. On September 7, 1971, when he aggravated a back injury, Lamontagne left his job and never again returned to covered employment.

According to Article III, § 5(b) of the Plan, an employee's failure to work at least 800 hours in covered employment within a period of two consecutive calender years,

termed a "break in employment," results in the cancellation of the employee's previously earned pension credit. Section 5(c) provides for an exception to the break in employment policy; it states that an absence from covered employment shall *not* be considered a break in employment if the employee is absent from work due to a total disability and the trustees of the Fund grant the employee's application to have the period of his absence recognized as a "grace period."

The Fund offers four types of pensions: Normal, Early Retirement, Reduced and Disability. *See* Article II. As set forth in Article II of the Plan, an employee must have accumulated pension credit for at least fifteen years to be eligible for any one of these pensions.

More than six years after leaving his job, on April 19, 1978, Lamontagne applied to the Fund for a Disability Pension. In a letter to Lamontagne dated November 14, 1978, the Fund's administrator responded; he wrote:

On Monday, November 6, 1978, the Board of Trustees of the United Wire, Metal and Machine Pension Fund denied your application for pension benefits for failure to meet the requirements for either a Disability or Partial Pension from the Fund.

... [A]t the time of your termination you were 52 years of age. To be eligible for an Early Retirement Pension then you had to be 55 years of age. Therefore todate [sic] you had incurred a break in service of 5 years since you failed to work at least 800 hours in covered employment within any period of two consecutive calendar years. See page 11 of the enclosed pension book.

Eight years later, on or about November 7, 1986, Lamontagne again applied for a pension from the Fund. This time the type of pension for which he applied was a Reduced Pension. Again, the Fund denied Lamontagne's application. In a letter to Lamontagne dated December 3, 1986, the Fund's attorney wrote that the Fund's trustees "declined the reconsideration of

their determination of 1978 which found that a break-in-service occurred."

Following the denial of his second application for a pension, Lamontagne commenced this suit against the Fund in the United States District Court for the Southern District of New York. In a complaint dated January 6, 1987, Lamontagne alleged that the Fund denied him a pension in violation of ERISA, 29 U.S.C. § 1104(a) (1982) ("fiduciary standards claim") and 29 U.S.C. § 1053 (Supp. IV 1986) ("vesting standards claim"); in violation of the terms of the Plan ("Plan violation claim"); and in violation of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5) (1982) ("Taft–Hartley claim"). In a judgment dated July 19, 1988, pursuant to the Fund's motion to dismiss the ERISA claims for lack of subject matter jurisdiction and the Fund's motion for summary judgment on the Taft–Hartley claim based on the statute of limitations, the district court dismissed the complaint. In her memorandum opinion and order, Judge Lowe held that the court lacked subject matter jurisdiction over Lamontagne's ERISA claims and that Lamontagne's Taft–Hartley claim was time-barred. While Judge Lowe did not explicitly discuss Lamontagne's Plan violation claim, she alluded to it and effectively dismissed it in a footnote. This footnote read: "Because plaintiff never had a vested right to a pension under either a pre-ERISA or ERISA plan, the Court need not consider ... those cases which hold that ERISA provides a federal forum for wrongful termination of benefits which vested prior to ERISA's effective date."

## DISCUSSION

### A. *Fiduciary Standards Claim*

■ Title 29 U.S.C. § 1144(b)(1) (1982) provides that the fiduciary standards section of ERISA "shall not apply with respect to any cause of action which arose, or *any act or omission* which occurred, before January 1, 1975." (Emphasis added.) The issue here, which the district court decided in the affirmative, is whether the alleged act or omission central to Lamontagne's

fiduciary standards claim occurred before January 1, 1975.

In *Baum v. Nolan*, 853 F.2d 1071 (2d Cir.1988), this court affirmed the district court's dismissal of a suit by participants in a Teamsters pension fund. These participants claimed that the trustees of the fund in 1973 breached their fiduciary duty under ERISA by entering into an agreement to merge the Teamsters pension fund with a pension fund for brewery workers without making adequate inquiry into the financial soundness of the brewery workers' fund. Further, they alleged that the trustees continued to breach their fiduciary duty after 1975 by using Teamsters fund assets to pay benefits to brewery workers. *Id.* at 1074–75. The court held that under § 1144(b)(1), ERISA did not apply to the participants' cause of action, since the merger agreement and the trustees' alleged failure to inquire about the financial soundness of the brewery workers' fund occurred before January 1, 1975. *Id.* at 1075. The fact that the merger "generate[d] consequences after ERISA's effective date," namely, the post–1975 payments to brewery workers, did not make the merger actionable under ERISA. *Id.*

In *Baum*, the court identified the act and omission which were central to the case, and those events which were merely the consequence of the act and omission, and held that only the former were relevant for § 1144(b)(1) purposes. Here, as Judge Lowe found, the act central to Lamontagne's case was the Plan's pre–1975 adoption of the break in employment policy. This policy required the Fund to deny Lamontagne's pension application in 1978, since Lamontagne had failed to obtain covered employment at any time after September 1971. Given Lamontagne's employment history, the 1978 denial of his pension application was merely a consequence of the Fund's adoption of the break in employment policy. The relevant act for § 1144(b)(1) purposes—the Fund's adoption of the break in employment policy—occurred before 1975. Therefore, the fiduciary standards section of ERISA does not apply to Lamontagne's claim and the ruling

by the district court in dismissing it was correct.

*Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496 (9th Cir.1984), a case cited with approval by *Baum*, 853 F.2d at 1075, is even more on point. In *Menhorn*, the Ninth Circuit held that a district court lacks subject matter jurisdiction over a pension applicant's claim that his employer violated the fiduciary standards section of ERISA by denying his application, when the denial was merely the "inexorable consequence" of pre–1975 events. 738 F.2d at 1502. The employee in *Menhorn* had incurred a break in employment in 1967. The court held that the employer's post–1975 denial of his application for a pension was the direct result of the employer's pre–1975 adoption of a break-in-service policy and its warnings to him that a break in employment would terminate his previously earned credits. *Id.* Here, as in *Menhorn*, the denial of the pension application followed inexorably from the pension fund's pre–1975 adoption of its break in employment policy. Consequently, the district court's dismissal of the claim herein was proper.

On appeal, Lamontagne argues that the Fund's denial of his application was not an inexorable consequence of the break in employment policy because the trustees of the Fund had to exercise discretion in deciding whether or not to recognize his absence from covered employment as a grace period. Under Article III, § 5(c) of the Plan, an employee must apply in writing to the trustees of the Fund to have the period of absence from work recognized as a grace period. Nothing in the record indicates that Lamontagne made such an application before the Fund's 1978 denial of his pension application. Lamontagne claims that at the time of his 1986 application for a Reduced Pension, he also applied to have his absence from covered employment recognized as a grace period. It is unclear from the record whether he did apply for a grace period. However, even if he did, such an application, made in 1986, years after the event, would have no bearing on whether the Fund's 1978 denial of his pension application was inexorable. There-

fore, no discretion was involved in the trustees' 1978 decision to consider Lamontagne's absence from covered employment as a break in employment, and not as a grace period.

### B. *Vesting Standards Claim*

■ For those pension plans in existence on January 1, 1974, the vesting standards section of ERISA, 29 U.S.C. § 1053, "shall apply in the case of plan years beginning after December 31, 1975." 29 U.S.C. § 1061(b)(2) (1982). In *Cohen v. Martin's*, 694 F.2d 296 (2d Cir.1982) (per curiam), this court affirmed the district court's dismissal of a complaint in which the plaintiff alleged that his former employer had violated ERISA's vesting provisions by terminating his pension benefits. The court held that, since the employer's pension plan existed prior to January 1974, ERISA's vesting standards section became effective in the plan year beginning January 1, 1976. *Id.* at 298. Further, the court held that since plaintiff had retired in 1973, before § 1053 became effective, ERISA's vesting standards section did not apply to his claim.

Here, the Plan was in existence on January 1, 1974; ERISA's vesting standards section became effective in the plan year beginning January 1, 1976; and Lamontagne ceased to work in covered employment in September 1971. Since he left covered employment before the 1976 effective date, ERISA's vesting standards section does not apply to his claim. Therefore, the district court's dismissal of Lamontagne's vesting standards claim was correct.

### C. *Plan Violation Claim*

■ Lamontagne contends that even if the district court had no subject matter jurisdiction over his fiduciary standards and vesting standards claims, the court had jurisdiction over his Plan violation claim. He argues that he had a vested right to a pension under the Plan, and that ERISA, 29 U.S.C. § 1132(a)(1)(B) (1982), provides a federal cause of action to a pension plan participant who has been denied benefits due him under a plan.

Lamontagne is correct in his statement that a pension plan participant has a federal cause of action if his vested pension rights have been violated. *See Cohen*, 694 F.2d at 300. However, he is mistaken in his belief that under the subject Plan he had a vested right to a pension. After his break in employment, all of Lamontagne's pension credits were cancelled pursuant to the break in employment policy set forth in Article III of the Plan. With no pension credits, he had no right to a pension. Since Lamontagne had no vested right to a pension, the district court acted properly in dismissing his Plan violation claim.

### D. *Taft–Hartley Claim*

■ The district court determined, and Lamontagne does not dispute, that the statute of limitations applicable to his Taft–Hartley claim is six years. *See Valle v. Joint Plumbing Indus. Bd.*, 623 F.2d 196, 202 n. 10 (2d Cir.1980) (statute of limitations in suit under Taft–Hartley based upon six-year period set forth in N.Y.Civ. Prac.L. & R. § 213 (McKinney 1972)). Nor does Lamontagne dispute that the cause of action for this type of claim accrues when there has been "a repudiation by the fiduciary which is clear and made known to the beneficiaries." *Id.* (emphasis omitted) (quoting *In re Barabash*, 31 N.Y.2d 76, 80, 334 N.Y.S.2d 890, 893, 286 N.E.2d 268, 270 (1972)). Here, the Fund clearly repudiated Lamontagne's pension application in 1978. Lamontagne's complaint was dated January 6, 1987. Since well over six years had passed between the time Lamontagne's claim arose and the time he filed suit, the district court correctly held that Lamontagne's Taft–Hartley claim was time-barred.

■ Lamontagne contends that his Taft–Hartley claim is not time-barred because an independent cause of action accrued in 1986 when the Fund denied his application for a Reduced Pension. He argues that since in 1978 he applied for a Disability Pension, not a Reduced Pension, he did not receive clear notice of the Fund's repudiation of his application for a Reduced Pension until 1986. This argument is without merit. In

its 1978 letter to Lamontagne, the Fund clearly stated that he had incurred a "break in service." The Plan, to which Lamontagne was referred, makes clear that a break in employment results in the cancellation of the employee's previously earned pension credit and that without such credit, the employee has no right to any type of pension. Since the 1978 denial should have made it evident to Lamontagne that he was ineligible for any type of pension, his cause of action against the Fund for the denial of his application accrued only once, in 1978, and not again. It would be unfair to the Fund to hold that Lamontagne could revive his cause of action simply by applying for a different type of pension at a later date.

■ Finally, Lamontagne argues that the 1978 denial could not have triggered the statute of limitations since that denial violated ERISA, 29 U.S.C. § 1133(1) (1982), which requires that an employee benefit plan, after denying a claim for benefits, "provide adequate notice in writing to [the employee], setting forth the specific reasons for such denial." Assuming *arguendo* that a violation of § 1133(1) would prevent the running of the statute of limitations, we conclude that this argument fails since no § 1133(1) violation occurred. The Fund's 1978 letter denying Lamontagne's pension application was inartfully drafted, particularly in that it referred to the age requirements for an Early Retirement Pension when Lamontagne had applied for a Disability Pension. However, the letter did clearly state that Lamontagne's "application for pension benefits ... fail[ed] to meet the requirements for ... a Disability ... Pension" and that Lamontagne "had incurred a break in service." These statements provided Lamontagne with adequate notice that his application for a Disability Pension had been denied and adequately set forth the reason for that denial.

## CONCLUSION

We have considered all of Lamontagne's other arguments and find them to be without merit. For the foregoing reasons, we affirm the judgment of the district court.