## William C. LYONS, Jr.

### v.

## FAIRFAX PROPERTIES, INC., et al.

### No. 3:01CV01355 (JBA).

United States District Court,
D. Connecticut.

Sept. 25, 2003.

---

James R. Fogarty, Fogarty, Cohen, Selby & Nemiroff, Greenwich, CT, David S. Hardy, Levett Rockwood, PC, Westport, CT, Anthony M. Fitzgerald, Carmody & Torrance, New Haven, CT, Elizabeth M. Cristofaro, Darren E. Sinofsky, Morrison, Mahoney & Miller, LLP, Maurice T. Fitzmaurice, Reid & Riege, P.C., Hartford, CT, for defendants.

### Ruling on Cross Motions for Summary Judgment [Docs. # 88 and # 92]

ARTERTON, District Judge.

William C. Lyons, Jr. ("Lyons") and the BILCO Company ("BILCO") have filed cross motions for summary judgment as to the ERISA claims in Counts Two and Four in the Amended Complaint.[1] Both parties agree that there are no material facts in dispute, and claim that they are entitled to judgment as a matter of law. Lyons asserts that BILCO breached its obligation to transfer his vested benefits in BILCO's pension plan to a qualified individual retirement account. BILCO argues that it was not required to transfer these funds because such a distribution would require amendment of its pension plan.

For the reasons discussed below, BILCO's motion is granted, and Lyons' motion is denied.

### I.  Background

Plaintiff William C. Lyons, Jr. is a former employee of Fairfax Properties, Inc. ("Fairfax"), which was a wholly owned subsidiary of the BILCO Company until Fairfax "spun off" of BILCO on June 21, 1999. *See* Lyons Aff. [Doc. # 91] at ¶ 3; Settlement Agreement [Doc. # 93, Ex. 1(A) ] at

James P. Connolly, West Hartford, CT, Jeffrey O. Donahue, Glastonbury, CT, for plaintiff.

---

1.  Lyons does not specify on which counts he seeks summary judgment, but his Memorandum of Law in Support of Motion for Summary Judgment addresses only those claims against BILCO (Counts Two and Four in the Amended Complaint).

1. Both before and after the spin-off, Lyons was Vice President in charge of Fairfax's Connecticut real estate operations. *See* Lyons Aff. [Doc. # 91] at ¶ 5.

Before the spin-off, Fairfax was a Participating Employer in the BILCO Defined Benefit Plan, a group pension plan for the company's employees. *See id.* at ¶ 6; BILCO Retirement Plan [Doc. # 57, Ex. A] at § 10.01. Lyons participated in this Retirement Plan, and has vested benefits well in excess of $5,000. *See* Lyons Aff. [Doc. # 91] at ¶ 6; Clute Aff. [Doc. # 93, Ex. 3] at ¶ 7(g).

BILCO, a closely held corporation owned and managed by various members of plaintiff's family, was chartered over seventy years ago by George W. Lyons, Sr. Several generations later, the family members who were shareholders of BIL-CO, including Lyons, came to have irreconcilable disagreements about BILCO's operations, management, and goals. Consequently, they agreed to divide BILCO's assets and "spin-off" Fairfax to 23 shareholders of BILCO (of which Lyons was one). *See* Lyons Aff. [Doc.# 91] at ¶ 4. On June 21, 1999, Lyons and the other shareholders signed a Settlement and Reorganization Agreement formalizing the spin-off, as a result of which they divested themselves of all ownership interest in BILCO, and BILCO likewise retained no ownership interest in Fairfax. *See id.*

As part of the Settlement Agreement, BILCO agreed to take steps, if possible, to distribute Lyons' vested interest in its defined benefit plan to a roll-over IRA established by Lyons. Section 8.3(c) of the Settlement Agreement provides:

Prior to or promptly following the execution of this agreement, BILCO shall have notified the actuary of its defined benefit plan that a divisive reorganization is taking place and authorized and directed such actuary to take all steps necessary to distribute on the Closing Date the full amount of vested benefits to Bill, Jr. to a rollover IRA established by Bill, Jr. for the receipt of such benefits; *provided,* however, that there will be no requirement to complete the foregoing if, in the opinion of the actuary, it would: (x) not be possible under applicable law; (y) require any amendment to the plan; or (z) require any cost to Bilco beyond the cost of the inquiry to the actuary and the normal cost of calculating the amounts owed to any participant and paying amounts out to any participant in connection with the defined benefit plan.

Settlement Agreement [Doc. # 93, Ex. 1(A) ] at § 8.3(c).

At the time of the spin off on June 21, 1999, Lyons maintained an Individual Retirement Account ("IRA"), which he continues to maintain. *See* Lyons Aff. [Doc. # 91] at ¶ 9. He has demanded that BIL-CO transfer his vested funds in the BIL-CO Retirement Plan into his IRA.[2] To date, BILCO has not distributed any of Lyons' vested benefits, arguing that its actuary has determined that to do so would require amendment of its Retirement Plan, and that therefore, under the express terms of the Settlement Agreement, such a transfer is not required. Lyons, however, argues that amendment to the BILCO Retirement Plan is not re-

---

**2.** Fairfax, which is headed by William C. Lyons, Sr., plaintiff's father, has also refused to establish a qualified group pension plan of its own into which Lyons' funds in the BILCO plan could be distributed. Lyons originally charged both Fairfax and Lyons, Sr. as defen-

dants, along with BILCO. On July 11, 2002, this Court granted Fairfax's and Lyons, Sr.'s motions to dismiss the claims against them. *See* Memorandum of Decision on Motions to Dismiss [Doc. # 67], No. 3:01cv1355 (JBA), 2002 WL 31060371 (July 11, 2002).

quired because the termination clauses of the Retirement Plan apply.

## II. Standard

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When deciding a motion for summary judgment, " 'the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). Here, the parties have filed cross-motions for summary judgment, and are in agreement that there is no issue of material fact in dispute. While not required to accept the parties' agreement, *see Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir.1993) (citation omitted), the Court sees no disputed material issues precluding disposition by summary judgment.

## III. Discussion

Plaintiff's amended complaint raises two claims against BILCO. Count Two alleges that BILCO violated 29 U.S.C. § 1132, *et seq.*, by failing "to amend its pension plan to allow for the transfer of [his] funds to a self-directed IRA or akin qualified retirement vehicle." Amended Complaint, Second Count [Doc. # 71] at ¶ 22. Count Four alleges BILCO's further violation of 29 U.S.C. § 1132, *et seq.*, for failing to comply with the terms of Section 5.11 of the BILCO Retirement Plan, which, Lyons alleged, allowed the distribution of his vested benefits in the BILCO plan into his IRA. *See* Amended Complaint, Fourth Count [Doc. # 71] at ¶¶ 14–15.

In its motion for summary judgment, BILCO argues that the Second Count is without merit because the Settlement Agreement contains no requirement that BILCO amend the Retirement Plan. Indeed, the Settlement Agreement expressly provides that BILCO is to "take all steps necessary" to distribute Lyons' funds, *unless*, "in the opinion of the actuary, it would...require any amendment to the plan." *See* Settlement Agreement [Doc. # 93, Ex. 1(A) ] at § 8.3(c). Lyons does not attempt to address this issue in his summary judgment motion. Based on the plain language of the Settlement Agreement, summary judgment in favor of BILCO as to Count Two is granted.

The parties' arguments for summary judgment as to Count Four, however, merit further discussion.

### A. BILCO's Summary Judgment Motion

As to Count Four, BILCO argues that, in full compliance with the Settlement Agreement, it has obtained an opinion from its actuary, William Zachry, on the issues of whether the Retirement Plan "(1) allows for a distribution to Lyons[ ] under any of its provisions, and (2) whether Section 5.11 allows for a distribution to be made to Lyons[ ]." Def.'s Mem. L. Supp. Summ. J. [Doc. # 93] at 6. Mr. Zachry has determined that "under the applicable law and the terms of the Retirement Plan it is not, and has not been, possible since June 21, 1999, to distribute to a rollover IRA established by Lyons the full amount of all vested benefits of Lyons." Zachry Aff. [Doc. # 93, Ex. 2] at ¶ 6. Mr. Zachry's opinion is supported by attorney Karen Clute, Counsel to BILCO's Retirement Plan. *See* Clute Aff. [Doc. # 93, Ex. 3] at ¶ 6.

Both Zachry and Clute base their opinions on a close reading of Section 5.11 of

the BILCO Retirement Plan, which defines the "eligible rollover distributions." Section 5.11 provides the following:

(a) This Section applies to distributions made on or after January 1, 1993. Notwithstanding any provision of the Plan to the contrary that would otherwise limit a distributee's election under this Section, a distributee may elect, at the time and in the manner prescribed by the Plan Administrator, to have any portion of an eligible rollover distribution from this Plan paid directly to an eligible retirement plan specified by the distributee in a direct rollover.

(b) *Eligible rollover distribution defined.* An eligible rollover distribution is any distribution of all or any portion of the balance of the distributee, except that an eligible rollover distribution does not include:

(1) any distribution that is one of a series of substantially equal periodic payments (made not less frequently than annually) for the life (or life expectancy) of the distributee or the joint lives (or joint life expectancies) of the distributee and the distributee's designated beneficiary, or for a specified period of ten years or more;

(2) any distribution to the extent such distribution is required under section 401(a)(9) of the Code; and

(3) the portion of any distribution that is not includible in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities).

(c) *Eligible retirement plan defined.* An eligible retirement plan is an individual retirement account described in section 408(a) of the Code, an individual retirement annuity described in section 408(b) of the Code, an annuity plan described in section 403(a) of the Code, or a qualified trust described in section 401(a) of the Code, that accepts the distributee's eligible rollover distribution. However, in the case of an eligible rollover distribution to the surviving spouse, an eligible retirement plan is an individual retirement account or individual retirement annuity.

(d) *Distributee defined.* A distributee includes an employee or former employee. In addition, the employee's or former employee's surviving spouse and the employee's or former employee's spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in section 414(p) of the Code, are distributees with regard to the interest of the spouse or former spouse.

(e) *Direct rollover defined.* A direct rollover is a payment by the Plan to the eligible retirement plan specified by the distributee.

BILCO Retirement Plan [Doc. # 57, Ex. A] at § 5.11. As the defendant's experts explain, while an IRA is an "eligible retirement plan" under the terms of Section 5.11(c) and the Internal Revenue Code, the transfer Lyons seeks is not an "eligible rollover distribution" under Section 5.11(b) of the Retirement Plan. Under the Plan, benefits are normally distributed as a single life annuity for unmarried participants and a joint and 50% survivor annuity for married participants, with the exception that a lump sum payment is allowable if a participant has a vested benefit with a present value of $5,000 or less. *See* Clute Aff. [Doc. # 93, Ex. 3] at ¶¶ 7b, 7c; BILCO Retirement Plan [Doc. # 57, Ex. A] at § 4.06, §§ 5.03–5.05, § 5.13. Because Lyons' accrued benefit under the Retirement Plan is in excess of $5,000, *see* Clute Aff. [Doc. # 93, Ex. 3] at ¶ 7(g); Plaintiff's Amended Complaint [Doc. # 71] at ¶ 21, he is ineligible for a lump sum payment, though he remains eligible to receive the

benefit as an annuity once he reaches the requisite age. *See* Clute Aff. [Doc. # 93, Ex. 3] at ¶ 7g. But because the annuity distribution that Lyons is eligible for is "one of a series of substantially equal periodic payments (made not less frequently than annually) for the life (or life expectancy) of the distributee", he cannot transfer it and roll it over into his IRA, as this kind of distribution is excepted from the Retirement Plan's definition of an "eligible rollover distribution." *See* BILCO Retirement Plan [Doc. # 57, Ex. A] at § 5.11(e); Zachry Aff. [Doc. # 93, Ex. 2] at ¶¶ 8d, 8e; Clute Aff. [Doc. # 93, Ex. 3], at ¶¶ 7e, 7g. Thus, the defendant's actuary and counsel conclude, a distribution such as the one Lyons requests would require amendment of the BILCO Retirement Plan.

Under the terms of the Settlement Agreement, BILCO is not required to transfer Lyons' benefit to his IRA if, in the opinion of BILCO's actuary, amendment of the Retirement Plan is required. *See* Settlement Agreement [Doc. # 93, Ex. 1(A)] at § 8.3(c). Because the actuary has concluded that Lyons' funds cannot be distributed to him without amendment of the plan, BILCO is under no further obligation to Lyons. As a result, BILCO argues that it is entitled to summary judgment in its favor.

### B. Lyons' Summary Judgment Motion

Lyons has also moved for summary judgment in his favor, and in support articulates a new theory about why BILCO is required to transfer his vested benefits into his IRA, one which was not raised in his amended complaint and which is left unaddressed by BILCO's experts. Lyons argues that amendment of the BILCO Retirement Plan is not required in order for BILCO to distribute his funds to him because the termination clauses of the Retirement Plan apply, not section 5.11. In particular, Lyons asserts that Fairfax, which had been a Participating Employer in the BILCO plan, ceased its participation in the plan at the time of the spin off, and thus the termination clauses of the plan allow a distribution such as the one he seeks.

Lyons points to two provisions in the BILCO Retirement Plan that he claims supports his position. Section 10.07 of the BILCO Retirement Plan provides:

> Without affecting the continuing participation in the plan of the company or any other Employer, the company, with or without cause, may terminate the participation of any employer in the plan by written notice to the employer, and any employer may voluntarily terminate its participation in the plan by written notice to the company. If any Employer ceases to be a party to this plan, the Plan Administrator shall cause to be determined that fraction of the fund allocable to the terminating Employer. Within a reasonable period of time the Trustee shall set aside sufficient assets from the fund to equal in value such fraction of the entire value of the fund. The Plan Administrator may require that any portion of such assets properly attributable to Accrued Benefits of Participants then employed by other Employers, together with the associated liability to provide benefits, be transferred to continuing Employers in the plan in accordance with ERISA, the Code or other applicable laws or regulations. The Plan Administrator may direct the Trustee to (a) distribute any of such assets not so transferred as if the plan had been terminated on the date the former Employer ceased to be a party to this plan, (b) deliver any of such assets not so transferred to another plan trustee designated by such former Employer, or (c) take whatever alternative ac-

tion may be deemed appropriate under the circumstances.

BILCO Retirement Plan [Doc. # 57, Ex. A] at § 10.07.

Section 8.04 of the Retirement Plan, moreover, describes the manner in which termination distributions should be made:

*Termination Distributions.* Upon termination or partial termination of the Plan, no amount shall thereafter be payable under the Plan to or in respect of a Participant affected by such termination except as provided in this Section 8.04. To the maximum extent permitted by law, transfers or distributions of Plan assets as provided in this Section 8.04 shall constitute a complete discharge of all liabilities under the Plan. Following receipt of a Notice of Sufficiency from the Pension Benefit Guaranty Corporation and a favorable determination from the Internal Revenue Service, the assets of the Plan available to provide benefits after provision for all expenses of administration and liquidation shall be liquidated and the proceeds distributed among or applied to provide benefits for or in respect of the Participants affected by such termination in accordance with the statutory priorities set forth in Title IV of ERISA. Such distributions or benefits shall be made or paid in such manner as the Plan Administrator shall determine, including without limitation lump sum cash payments, cash installments, the purchase of immediate or deferred annuities, or any combination of the foregoing or other options as may be approved by the Pension Benefit Guaranty Corporation and the Internal Revenue Service. In the discretion of the Plan Administrator or as may be required by applicable law or regulation, benefit payments, including regular payments to retirees under the Plan, may be made pending action by the Pension Benefit Guaranty Corporation or Internal Revenue Service in connection with the Plan's termination.

BILCO Retirement Plan [Doc. # 57, Ex. A] at § 8.04.

Lyons acknowledges that it is unclear whether Fairfax ever provided written notice to BILCO about its withdrawal from the Retirement Plan, or whether BILCO ever provided notice to Fairfax that it was terminating its participation in the Plan, as required in Section 10.07. He leaves unaddressed whether the "Notice of Sufficiency from the Pension Benefit Guaranty Corporation and a favorable determination from the Internal Revenue Service" described in Section 8.04 were ever sought by Fairfax or BILCO, or why these steps are not relevant to the determination of what distributions are required under the Plan. Instead, Lyons concludes: "[H]ere clearly was a *de facto* termination of Fairfax's participation in the Plan. Upon that termination, Section 10.07 provided that the Plan Administrator [had] the discretion of treating that portion of the plan attributable to Fairfax as if the entire plan was terminated. In such situation, Section 8.04 of the Plan enables the administrator to make a lump sum distribution to the beneficiary without Plan Amendment." Pl. Mem. L. Supp. Summ. J. at 6. Because the Retirement Plan would allow, without amendment, funds to be distributed to his IRA, Lyons argues that BILCO has breached the terms of the Settlement Agreement, and that therefore summary judgment in his favor is appropriate.

## C. Analysis

In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court declared that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless

the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Here, two contracts, the Retirement Plan and the Settlement Agreement, govern the distribution of retirement benefits to Lyons, and both give a plan administrator or fiduciary the power to interpret the plan. The Retirement Plan itself gives the plan administrators discretion to interpret the terms of the plan,[3] and the Settlement Agreement binds Lyons "to the opinion of the actuary." *See* Settlement Agreement [Doc. # 93, Ex. 1(A) ] at § 8.3(c). To the extent the appropriate administrators or fiduciaries have already interpreted the terms of these contracts, a deferential abuse of discretion standard of review is appropriate. For the following reasons, however, Lyons' argument fails even under a *de novo* standard of review.

■ There are three independent reasons why Lyons' summary judgment motion must fail. First, despite Lyons' pro-

testations to the contrary, the record fails to establish that a partial termination of the BILCO plan has occurred under plan terms or by operation of law. There is no evidence that any notice has been given. The notice provisions of Sections 10.07 and 8.04 of the Retirement Plan are prerequisites to termination, and are essential for compliance with ERISA. *See* 29 U.S.C. § 1341 (providing the "exclusive means" of plan termination).[4]

■ Second, even giving effect to the termination clauses Lyons cites, the distribution Lyons seeks is not permissible under the terms of the Retirement Plan. Put simply, the distributions referred to in the termination clauses do not apply independently from the distribution guidelines in Section 5.11. "[W]ell established principles of contract construction...require that all provisions of a contract be read together as a harmonious whole, if possible." *Kinek v. Paramount Communications, Inc.*, 22 F.3d 503, 509 (2d Cir.1994) (citing *Enercomp, Inc. v. McCorhill Pub-*

3. Section 9.02 of the Retirement Plan states: "The Administrative Committee shall have the exclusive right and discretion to interpret the provisions of the Plan, to determine any question arising thereunder or in connection with the administration of the Plan (including the authority to remedy any omissions, ambiguities or inconsistencies), to decide any claims concerning the eligibility of any person to participate in the Plan or the right of any person to receive benefits under the Plan and to authorize the payment of such benefits." *See* BILCO Retirement Plan [Doc. # 57, Ex. A] at § 9.02.

4. Moreover, even if, as Lyons contends, a *de facto* partial termination occurred when the employees of the spun-off Fairfax ceased participation in the Plan, there is no evidence that the corresponding part of the BILCO Plan terminated. "Partial termination" is a term of art included in the Internal Revenue Code as a means to protect employees whose benefits have not yet vested at the time of a significant contraction of a pension plan. As

26 U.S.C. § 411(d)(3) provides, in order for a retirement plan to remain tax qualified, upon termination or partial termination of a retirement plan, the "benefits accrued to the date of such termination ... are nonforfeitable." 26 U.S.C. § 411(d)(3). Here, there is no dispute that Lyons' benefits are vested and he will receive these vested benefits once he attains the requisite retirement age. Moreover, partial termination within the meaning of the Internal Revenue Code "does not cause a corresponding portion of the plan to be spun off or terminated ... [and] does not alone result in a pension plan's partial extinction." *Baum v. Nolan*, 853 F.2d 1071, 1077 (2d Cir.1988); *see also* 29 U.S.C. § 1343(c)(4) (providing that "a termination or partial termination of the plan within the meaning of section 411(d)(3) of Title 26," is a "reportable event" under ERISA, but stating that "the occurrence of such a termination or partial termination does not, by itself, constitute or require a termination of a plan under this subchapter.").

*lishing*, 873 F.2d 536, 549 (2d Cir.1989)). In this case, the plain language of the Plan compels a coherent interpretation of the various provisions on distributions. Section 5.11 defines "eligible rollover distributions" without regard for when the distribution is made (at the time Plan is still in effect, or at time of termination). Section 8.03 of the Retirement Plan clearly directs that termination distributions accord with the other provisions on distributions in the plan:

> During the termination process the named Fiduciaries of the Plan shall remain in existence and the provisions of the Plan which are necessary or appropriate for the execution of the Plan and the distribution or transfer of the assets of the Plan shall remain in force.

Under both the plain language of the Retirement Plan and well-established rules of contract construction, it is appropriate to apply the rules on "eligible rollover distributions" in Section 5.11 to the distributions made at the time of termination of the Plan. As a result, the transfer that Lyons seeks is inconsistent with the existing terms of the Retirement Plan, and amendment of the Plan would be necessary.

■ Third, because the Retirement Plan alone does not require a transfer of Lyons' vested benefits into his IRA, *see* BILCO Retirement Plan [Doc. # 93, Ex. 1(A) ] at § 10.07 (providing that the Plan Administrator may direct the Trustee to distribute assets, to deliver assets to another plan, or to "take whatever alternative action may be deemed appropriate under the circumstances"), the Court cannot independently construe the Retirement Plan to require such a transfer. Instead, it remains necessary to interpret the Retirement Plan in conjunction with the Settlement Agreement. Under the terms of

the Settlement Agreement, Lyons agreed to be bound by the opinion of BILCO's actuary, who has since interpreted the Retirement Plan to not permit a transfer into Lyons' IRA. Lyons has not argued, nor has he presented any evidence, that the actuary acted in bad faith or abused his discretion in any way.[5] Absent any evidence in this regard, the Settlement Agreement, including Lyons' bargain for the actuary's opinion, must be enforced.

## IV. Conclusion

For the foregoing reasons, Lyons' summary judgment motion is DENIED, and BILCO's summary judgment motion GRANTED. Counts Two and Four of Lyons' amended complaint, which are addressed solely toward BILCO, are dismissed.

IT IS SO ORDERED.

---

**5.** As BILCO points out, Lyons "has not sought to depose Mr. Zachry, and he has not retained an actuary or other expert witness to chal- lenge Mr. Zachry's opinion." Def. Mem. L. Supp. Summ. J. [Doc. # 93] at 6–7.